# Reed's Appeal.

1. In an issue directed to try a question of fact in the distribution of the proceeds of a sheriff's sale, a writ of error does not lie till after final decree.

2. Whenever it is alleged that there were errors on the trial of the issue, the proper practice is after the decree of distribution, to bring up the whole record by writ of error.

3. If parties take an appeal without accompanying it with a writ of error, the judgment on the feigned issue cannot be reversed on the appeal from the decree, and the finding of the jury is conclusive.

4. A judgment-creditor, subsequent to a foreign attachment laid, has a standing to contest the facts of the non-residence of the defendant and that the plaintiff in the attachment gained a lien by his writ.

5. A debtor does not become a non-resident so as to subject him to a foreign attachment by leaving his residence and going into another state to seek a new one, until he has obtained another place of abode, with intention of remaining in it.

6. A domicil remains until a new one be obtained in fact and intention: except that the domicil of birth reverts, as soon as one who had acquired a new domicil removes from it, with the purpose to resume his native domicil.

7. The Act of June 16th 1836, as to issues in distribution of proceeds of sheriffs' sales, construed.

8. Brown's Appeal, 2 Casey 490, criticised and limited.

[Reed's Appeal.]

March — 1872. Before THOMPSON, C. J., SHARSWOOD and WILLIAMS, JJ. AGNEW, J., at Nisi Prius.

Appeal from the decree of the Court of Common Pleas of *Warren county :* Of January Term 1872, No. 287.

In the matter of the distribution of the proceeds of the sheriff's sale of the real estate of William L. Tamblyn.

On the 2d of August 1869, Boon Mead issued a foreign attachment out of the Court of Common Pleas of Warren county, against Tamblyn, under which his real estate was attached on the 4th of the same month.

On the 9th of the same August a judgment was entered in the same court against Tamblyn for $4320, in favor of Dwight Reed.

On the 14th of March 1870, judgment was obtained in the foreign attachment against Tamblyn for $880.26. Subsequently to March Term 1870, the real estate attached in the foreign attachment was sold under Reed's judgment at sheriff's sale for $1200, and that sum brought into court for distribution.

Mead then presented a petition setting forth the foregoing facts and averring that on the 2d of August, when the attachment was issued, Tamblyn was not a resident within the state of Pennsylvania, and praying that his judgment should be first paid out of the fund in court.

Reed answered the petition denying that when the attachment issued Tamblyn was a non-resident of Pennsylvania, and averring that he was a resident and an absconding debtor, and his property not the subject of a foreign attachment. On this petition a feigned issue was directed, in which Boon Mead was made plaintiff and Dwight F. Reed defendant, " to try the question whether the real estate attached by foreign attachment (Boon Mead v. William L. Tamblyn), was liable to process of foreign attachment at the time said writ was issued and served."

The issue was tried December 15th 1871, before Williams, P. J., of the Fourth District.

There was evidence for the plaintiff that Tamblyn had been a resident of Wayne county for some years, and left there with his family on the 28th of July 1869, for the purpose of going to San Francisco, but stopped in Chicago, and after having remained a week there, boarding at a hotel, still with the purpose of going further, his wife refused to go further; he then determined to stay in Chicago, rented a house and in about three weeks afterwards went into business in that city. He had no intention to make Chicago his residence until he arrived there.

There was evidence for the defendants that Tamblyn had left Wayne county clandestinely for the purpose of avoiding his creditors.

The plaintiff's points were :—

1. If William L. Tamblyn left the state of Pennsylvania with

his family with the intention of making a residence elsewhere and of not returning into the state for the purpose of resuming it here, he ceased to be a resident of Pennsylvania when he left it for that purpose, and his estate was subject to the process of foreign attachment as between an attachment and a subsequent judgment creditor; although he may not have determined at what particular place he would fix his residence outside the state when he left.

2. As between the parties to this issue the fact as to whether said Tamblyn was or was not heavily indebted is irrelevant, and the defendant not being a domestic attaching-creditor is not in a position to raise the question as to whether the said Tamblyn is an absconding debtor.

The court charged :—

"We affirm the 1st and 2d points submitted by the plaintiff's counsel.

"We instruct you that if Tamblyn was actually a non-resident at the date of issuing the attachment, *i. e.*, had left the state with the intention to remain away, having his family with him and not being in the county when the writ issued, it was properly issued so far as the defendant is concerned. The defendant in this issue being a judgment-creditor of Tamblyn stands in the same position. If Tamblyn could not be heard to deny his non-residence under the circumstances disclosed in this case, this judgment-creditor cannot. Residence or non-residence is to be determined not by following the debtor to ascertain if he has actually settled in business elsewhere, but by ascertaining with what intent he leaves his dwelling-place within the Commonwealth, and passes with his family outside her boundaries. If such removal is with the intent to defraud, &c., a domestic attachment would take priority over the foreign attachment, but the presence of the fraudulent intent gives no rights to any one who does base his proceedings upon it.

"To the foregoing instructions defendant's counsel excepted before verdict and at their request the said instructions were written out and filed."

The verdict on the issue was for plaintiff, and the court decreed "that the amount of judgment and costs in case of Boon Mead *v.* W. L. Tamblyn, together with the costs made in this issue, be paid out of money in court."

Reed appealed to the Supreme Court.

The errors assigned were to the charge, and the answers of the court to the points; and to the decree ordering the judgment and costs in Mead *v.* Tamblyn to be paid out of the money in court.

*W. D. Brown*, for appellant.—Tamblyn had not lost his residence; he was the subject not of a foreign but a domestic attachment: Barnet's Case, 1 Dallas 152; White *v.* Brown, 1 Wallace C. C. R. 217; Pfoutz *v.* Comford, 12 Casey 420.

[Reed's Appeal.]

*R. Brown,* for appellee.—A removal from a state with an intention at the time to change the domicil is sufficient to change the residence: Burch *v.* Taylor, 1 Phila. R. 224; Reed *v.* Ketch, Id. 105; Serg. on Attachments 63.

The opinion of the court was delivered, May 13th 1872, by

SHARSWOOD, J.—It was settled in Brown's Appeal, 2 Casey 490, that where there has been a feigned issue and a verdict and judgment, in the case of the distribution of the proceeds of a sheriff's sale, the proper course is to bring up the whole record by appeal. I cannot reconcile that decision with the express provisions of the Act of June 16th 1836, Pamph. L. 777, which after enacting, sect. 87, that if any fact connected with the distribution shall be in dispute, the court shall, at the request in writing of any person interested, direct an issue to try the same, and that the judgment upon such issue shall be subject to a writ of error in like manner as other cases wherein writs of error now lie, it declares, sect. 88, that upon a writ of error issued as aforesaid, the whole record shall be returned, and it shall be competent for any person aggrieved by the decree of distribution to take exceptions thereto if the judgment upon such issue should be affirmed. It is clear that the writ of error does not lie until after final decree, and that it is only in the event of the affirmance of the judgment upon the feigned issue that the decree of distribution is to be reviewed in this court. It was meant that as the trial by jury on the disputed facts was given to the parties as a constitutional right, so the verdict and judgment unreversed should be conclusive; if reversed, the cause must be remitted for another trial. Upon an appeal from the decree simply, how can it be reversed if it conform as to the facts to the verdict and judgment upon the feigned issue; in other words, upon such an appeal without a writ of error, must not the parties be held to have acquiesced in the judgment? This view seems to be confirmed by the 89th section, which provides that any person aggrieved by the decree of the court in any case of distribution made, *without the intervention of a jury,* may, at any time within twenty days thereafter, appeal from the same to the Supreme Court. The act may be held not to take away the right of appeal even from the parties to the feigned issue, if it be assumed that there is some general right to appeal not founded upon express statutory provisions, and that is the extent of the determination in Brown's Appeal, and with the judgment in that case, so far as it goes, we do not mean to interfere. No question arose in that case on any bill of exceptions on the trial of the feigned issue. The verdict of the jury was special, and was acquiesced in, and the judgment of the Supreme Court was that, assuming it to be true, the decree below was wrong, and it was accordingly reversed. We hold the proper practice to be as

to the parties to the feigned issue, whenever errors are alleged to have occurred on the trial, after the decree of distribution, by a writ of error to bring up the whole record. If they appeal without accompanying their appeal with such writ, no judgment of reversal of the judgment on the feigned issue can be regularly entered here on the appeal from the final decree, and as a consequence the finding of the jury upon the feigned issue must be regarded as conclusive. We are aware that this court has in some cases expressed its disapprobation of writs of error on feigned issues, as in Christophers *v.* Selden, 4 Casey 165; but that was a case in which the writ of error was issued before the final decree, a practice contrary both to the letter and spirit of the act, and in such a case the writ ought undoubtedly to be quashed. The only tendency of such writs is to procrastinate. It is true that the proper practice under the provisions of the act should be understood, and we think it ought to be as indicated in this opinion.

Assuming the verdict of the jury below as settling the question of fact that Tamblyn was, at the time of the issuing of the foreign attachment, a non-resident of the Commonwealth, the decree of the court below was entirely right. Upon the main position assumed that the subsequent judgment-creditor had no standing in court to question the prior lien of the attaching creditor, we consider it as settled by Pfoutz *v.* Comford, 12 Casey 420. In that case upon a foreign attachment laid upon personal property, a subsequent execution-creditor was allowed to intervene and contest the question whether the defendant in the attachment was a non-resident. It would be an anomaly if a man, by issuing a foreign attachment against a resident, could thereby obtain an immediate lien, either upon land or goods, which would take precedence of subsequent judgments or executions. Reed, the appellant and judgment-creditor, had a clear right to show that Tamblyn was not a non-resident within the meaning of the Act of 13th June 1836, § 44, Pamph. L. 580, and that he acquired no lien by the writ. Were the bills of exceptions properly before us, we would be compelled to hold that the learned judge erred on the trial of the feigned issue in affirming the plaintiff's 1st point; but it was an error which has done the appellant no injury, for it clearly appears in the evidence, and was admitted in the argument at bar, that at the time the writ of foreign attachment issued, Tamblyn had actually taken up his abode with his family in Chicago, with the intention of making it the place of his permanent residence. It was decided by this court in Pfoutz *v.* Comford, *supra*, that a debtor does not become a non-resident, so as to subject him to a foreign attachment, by leaving his place of abode in this state, and going to another state to seek a new residence, but continues a resident of the state until he has obtained another place of abode with the intention of remaining in it. This decision accords entirely

with all the authorities. Mr. Justice Grier expressed it clearly and tersely in White *v.* Brown, 1 Wall. C. C. R. 264: "A man cannot be considered as a vagabond or a person without any domicil; for the domicil of origin is not abandoned until a new one has been intentionally and actually acquired." A domicil once acquired remains until a new one is acquired actually, *facto et animo;* the fact and intention must concur: Story on Confl. § 47. There is one recognised exception to this rule, which is that the domicil of birth easily reverts, and therefore if a man has acquired a new domicil different from that of his birth, and he removes from it with an intention to resume his native domicil, the latter is re-acquired, even while he is on his way, *in itinere;* for the native domicil reverts the moment the acquired domicil is given up with the intention of resuming the former: Story on Confl. § 47. In this as in other cases, *exceptio probat regulam.*

Decree affirmed.