# Carey's Appeal.

1. The domicil is where a person has fixed his habitation without a present intention to remove from it.

2. To constitute domicil there must be both residence and an intention to make the place of residence the home of the party.

3. Primâ facie the residence is the domicil.

4. The intention formed and announced to change a domicil, will not avail unless there be an actual change of habitation.

5. In this case a testator made a will in Pennsylvania witnessed by two witnesses;—the evidence showing that his domicil was in Rhode Island where three witnesses are required, on appeal to the Supreme Court, probate of the Pennsylvania will by the register in Philadelphia was revoked and letters testamentary vacated.

February 2d 1874. Before AGNEW, C. J., MERCUR and GORDON, JJ. SHARSWOOD, J., at Nisi Prius.

Appeal from the decree of the Register's Court of *Philadelphia*: In the matter of the probate of the will of William Gibson, deceased, and granting letters testamentry thereon: No. 358, to January Term 1872.

On the 25th of April 1868, a will of Dr. William Gibson was presented to the register of wills of Philadelphi'a, admitted to probate and letters testamentary granted to John J. Reese one of the executors named in it.

The following is the will :—

"My last will and testament. Philadelphia, December 19th, 1867.—In the name of God, Amen. This is my last will and testament.—I bequeath to my old and faithful colored servant, Fanny Johns, formerly Fanny Robertson, five hundred dollars, free from any demand or claim of any husband she may have, and for her own special benefit. I also bequeath to my kind attendant and nurse, Jemima Cartledge, fifteen hundred dollars for her own special use, and free from the claims of any one. The balance of my estate, real, personal and mixed, I bequeath to my three daughters, Sally A. Reese, Grace Noble Carey, wives of Dr. John J. Reese, of Philadelphia, and of Henry G. Carey, of Baltimore, and to Ella Jane Gibson, of Portsmouth, Rhode Island, in three equal parts, share and share alike, and for their *sole* benefit, and free from the demands or claims of any husband or husbands either of them may have. I appoint as my executors and administrators John James Reese, of Philadelphia, and Henry G. Carey, of Baltimore.          WILLIAM GIBSON. [SEAL.]

   Witnesses:
 J. T. HEEFNOL, [SEAL.]
 JOHN J. REESE, Jr., [SEAL.] "

From the decree of the register, Henry G. Carey, the husband of a daughter of the deceased and executor named in another will, appealed to the Register's Court.

The other will was as follows :—

" I, William Gibson, of the city and county of Newport, in the state of Rhode Island, do make this, my last will and testament :

"First. It is my will that my debts and all charges be paid out of my estate.

"Then I give, devise and bequeath all the residue of my estate, real and personal, to my two daughters, Grace Noble Carey, wife of Henry G. Carey, of Baltimore, and Ella Jane Gibson, of Newport, aforesaid, share and share alike, to be to them and their heirs for ever.

"I appoint and make the said Henry G. Carey executor of this my last will and testament, and last I do hereby revoke all former and other wills by me at any time heretofore made, and I publish and declare this only to be my last will and testament.

"In witness whereof, I have hereunto set my hand and seal this first day of March, in the year one thousand eight hundred and sixty-five.　　　　　　　　WILLIAM GIBSON.　[SEAL.]

"Signed by the above-named William Gibson, the testator, as and for his last will and testament, in the presence of us, present at the same time, who, at his request, in his presence and in presence of each other, have subscribed our names as witnesses thereto.　　　　　　　　J. W. VOSE,
　　　　　　　　CHAS. T. HOPKINS,
　　　　　　　　WILLIAM B. WHITE."

By the laws of Rhode Island it is required that a will to pass either real or personal estate must be "attested and subscribed" in the presence of three or more witnesses, or it will be void.

The question controverted in the Register's Court was whether the domicil of Dr. Gibson was in Pennsylvania or Rhode Island at the time of his death; the Pennsylvania will having been witnessed but by two witnesses.

The evidence showed that the will of 1865 had been proved in the Probate Court of the city of Newport, Rhode Island, and that John J. Reese and wife appealed from the decree of that Probate Court to the Supreme Court, assigning as one of their reasons for appeal that the testator was not domiciled in Newport. The Supreme Court of Rhode Island reversed the decree of probate on the ground that Newport was not the domicil of the testator. The will was then presented for probate by Carey to the Court of Probate of the town of Portsmouth, Rhode Island:— Carey alleging in his application that the testator was domiciled in that town. The will was admitted to probate by that court, and letters testamentary granted to Carey. Reese and wife appealed from this decree to the Supreme Court of Rhode Island, and the decree of the Probate Court of Portsmouth was affirmed, November 16th 1869.

There was much oral testimony taken in the Register's Court on the question of the domicil of the testator. A synopsis of it is contained in the opinion of the Supreme Court as delivered by Judge Gordon; it is not necessary therefore to give it at large. The Register's Court affirmed the decree of the Register; and this decree of affirmance was assigned for error by Carey on an appeal to the Supreme Court.

*C. H. Gross* and *G. W. Biddle*, for appellant.—To constitute domicil there must be residence with the intention of making it the home: Story on Conflict of Laws, sect. 144–49.

*George Junkin* (with whom was *W. L. Hirst,*) for appellees.— Domicil is the place where a person has fixed his ordinary dwell-

[Carey's Appeal.]

ing, without a present intention of removal : Bouvier, title " Domicile," and to constitute it, two circumstances must unite—actual residence and an intention to remain : Brown *v.* Albright, 40 Howard ( N. Y.) Practice Reports 260 ; United States *v.* The Penelope, 5 Peters' Admiralty Decisions 450. Residence is a question of intention : Casey's Case, 1 Ashmead 126 ; Miller's Estate, 3 Rawle 312 ; White *v.* Brown, 1 Wallace, Jr. 217 ; Prentiss *v.* Barton, 1 Brock. 393 ; Ex parte Wiggin, 7 Bank. Reg. 90. The burden of proof lies upon him who asserts a change of domicil : Burnham *v.* Rangeley, 1 Wood. & Minot 7. When one changes his residence permanently, he loses his domicil and acquires a domicil in the place of his own residence. But upon a return with an intention to reside, his original domicil is restored : Miller's Estate, 1 Gallis. 274, 284 ; The Ann Green, 5 Rob. Adm. R. 99 ; 3 Wash. C. C. R. ; Hallet *v.* Bassett, 100 Mass. 167; Littlefield *v.* Brock, 50 Maine 475 ; Bank *v.* Balcom, 35 Conn. 351 ; Still *v.* Woodville, 38 Miss. 646.

The opinion of the court was delivered, February 26th 1874, by

GORDON, J.—The pivot around which this case revolves is the question of the domicil of Dr. Gibson at the date of the execution of the will of 1867. If that domicil is found to be in Pennsylvania, then that will is good, the decree of the Register's Court was right, and further it is a revocation of the will published in Rhode Island in 1865. On the other hand, if his home was in Rhode Island in 1867, at the time of the publication of the Pennsylvania will, then it is conceded on all hands that the latter will is void, because not witnessed as required by the Rhode Island statute. The governing rule in such cases being that a will of personal property must conform to the law of the domicil of the testator : Flannery's Will, 12 Harris 502. This view of the case relieves us from the consideration of the supposed conflict between the courts of Rhode Island and our own Register's Court, and the whole case is narrowed down to a few obvious facts.

Dr. William Gibson, the testator, was born in Maryland, where he lived until he was about thirty years of age : he then removed to the city of Philadelphia, where he resided some thirty-five or forty years, during which time he practised his profession and occupied the chair of surgery in the University of Pennsylvania. This city was his home ; here he acquired his fame ; here were the sepulchres of his two wives and several of his children, and here he himself was buried. At about the age of sixty-five he retired from his practice and professorship, and removed to a farm in Bucks county, where he lived for a few years, and then sold his farm, and spent some time travelling with his family in Europe.

About the year 1860 he returned to Pennsylvania, repurchased

his old farm in Bucks county, and resided upon it for one or more years. Up to this time we have no difficulty about his domicil. It was in Pennsylvania. Maryland, the domicil of his origin, he had long abandoned, and had fully identified himself with the state of his adoption.

But before he finally left Pennsylvania, he had changed his domicil therein from Philadelphia to Bucks county, and he certainly was never redomiciliated in that city unless it was in the fall or winter of 1867, which is the point in controversy. His next remove was to the state of Maryland, having sold his farm in Bucks county and bought one near Baltimore; and upon this place he resided for about one year. · Again he sells out, and we next find him, about the year 1863, settled down in his own house, with his family and household goods at Newport, in Rhode Island. Here, for some four years, he made his home, making in the meantime occasional visits to St. John's and elsewhere, but always returning to Newport. Here he paid his taxes, and voted at this place also; in March 1865, he made his will, describing himself therein as of Newport, Rhode Island. At this place also, he kept his money and bank account; and if he had any real estate outside of this state we are not thereof informed. In the fall of 1867 we again find him shifting his place of residence; this time, however, it was to Portsmouth, in the same state. Here, after disposing of his Newport property by putting it into the hands of an agent for sale, he purchased a homestead and again settled down with his family. We presume that no one would take upon himself to say that at this time Dr. Gibson was not domiciled in Rhode Island.

All the requisites pointed out by the text-writers are met and filled. Let us see what those requisites are. The domicil of a person is that place in which he has fixed his habitation, without any present intention of removing therefrom: Bouv. L. Dict., vol. 1, 489; Sto. Con. of Laws 43. Two things must concur to constitute domicil — first, · residence; secondly, the intention of making the place of residence the home of the party. There must be both fact and intent: Id. sect. 44. So, though the residence be taken for a temporary purpose, intention may change its character to a domicil, but primâ facie the place of residence is the domicil until other facts establish the contrary. Even a recent establishment was held to constitute a domicil where the intention of making it a personal residence was proved upon the party: Phil. Law of Dom., sect. 215. This rule applies not only in our interstate habitation, but also where a citizen removes to a foreign country. As where a citizen of Pennsylvania removed to Cuba, settled there and engaged in trade; it was held, that the presumption in favor of the domicil of origin no longer existed, and that the burden of disproving the domicil of choice lay upon him who denied it: Hood's Est., 9 Harris 106. *A fortiori* would this presumption

arise in favor of the domicil of choice, in the case of a citizen removing from one state to another, for he is a citizen of the United States, and the whole land is his common country. Now applying these principles to the testator's case, and we find not one circumstance, either of fact or law, wanting to fix his domicil in Rhode Island. He resided there not only long enough for this purpose, but also for that of citizenship. It was the only place in the world where he had a permanent home; there was the abode of his family. In that most solemn instrument that man can set his hand to, his last will and testament, he describes himself as a citizen of that state. It is there he pays taxes, and there he votes. A more perfect combination of fact and intention is not conceivable. From whatever stand-point we view this residence, we find it labelled "domicil," in unmistakable characters. But it is insisted that this domicil was changed by his expressed intention to abandon Rhode Island and resettle in Philadelphia. Let us examine the facts adduced in support of this hypothesis. In September 1867 he left Portsmouth, not for Philadelphia, but for Savannah, with the intention of returning in the spring. Thomas Cavenaugh tells us that he left his house and grounds in his charge, to be properly kept until his return in the spring.

In his journey southward, he stopped at Philadelphia with his daughter Mrs. Reese, and remained with her some ten days or two weeks. During this time he frequently expressed his intention of returning to Philadelphia, for the purpose of making it his permanent place of residence, and regretted that his arrangements for his journey to Savannah were such that he could not at once do so. He desired Dr. Reese to look out a house for him, but directed him not to engage it positively until his return in the spring. It was during this time that he executed his second will, the granting of letters on which gave rise to the present controversy. Shortly after this he departed for Savannah, where he died March 2d 1868. These are the circumstances, connected with two others hardly worth the mention, viz.: that he had a few old and valueless goods stored in the University buildings, and seven thousand dollars in government bonds, deposited in the Mechanics' Bank of Philadelphia, which are produced to prove a change of the testator's domicil from Rhode Island to Pennsylvania. Giving this testimony all the force which can be asked for it, it only evinces an intention to change his residence without one accompanying step in that direction. This is not sufficient, for, as we have already seen, though the intention to change one's domicil be fully formed and announced, yet if there be no actual change of habitation, it will avail nothing: Sto. Conf. of Law, sect. 45. In this case, however, there does not appear to have been even a present intention to make that change; at best, it was to have been made in the future. Dr. Reese was not to contract for a house for him until

[Carey's Appeal.]

the next spring, because his proposed trip South barred the idea of his immediate settlement in Philadelphia. His will made during his short sojourn in that city, describes his unmarried daughter, who was one of his family, as of Portsmouth, Rhode Island. But not only does the present intention thus fall out of the count, but his very last expressions, as appear by his diary and letters, indicate that he regarded Portsmouth not only as his present but his future home. It is thus that hard facts leave us no alternative, but to conclude that at the time of the making of the will of 1867, the domicil of Dr. Gibson was in Rhode Island, and as in such case the laws of that state must govern, it follows that the decree of the Register's Court was erroneous, and must be reversed.

And now, February 24th 1874, this case came on for hearing on an appeal from the Register's Court of the county of Philadelphia, and was argued by counsel, &c.; and now, on consideration thereof, it is ordered, adjudged and decreed that the decree of the said Register's Court be reversed and set aside, and that the decree of the said register, admitting to probate and granting letters testamentary upon the alleged last will of Dr. William Gibson, deceased, be reversed and set aside, and that said letters so granted be vacated and declared void and of no effect whatever, and that the appellees pay the costs of suit.