## Price, Appellant, v. Price.

[Marked to be reported.]

|156   617
|169   298

| 156      617|
| 30 SC ¹235|

*Domicile—Evidence—Intention.*

A person's domicile is the place where he has his true, fixed and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning.

Domicile is acquired by actual residence coupled with the intention to reside in a given place or country, and cannot be acquired in any other way. If the intention of permanently residing in a particular place exists, a residence in pursuance of that intention, however short, will establish a domicile.

*Domicile of origin—Presumption of change—Burden of proof.*

Domicile of origin must be presumed to continue until another sole domicile has been acquired by actual residence, coupled with the intention of abandoning the domicile of origin. This change must be animo et facto, and the burden of proof is on the party who asserts the change.

*Will—Executor—Domicile—Burden of proof.*

On an issue to determine the domicile of a testator, the executor of the will was made plaintiff, and testator's only child defendant. Plaintiff in his declaration averred that testator at his decease was a resident of Pennsylvania. This was traversed by the plea. It appeared from uncontradicted evidence that testator's domicile of origin was West Chester, Pa.; that his domicile of choice was Brooklyn, N. Y.; that, having purchased a farm near West Chester, he returned from Brooklyn to West Chester, where he died. *Held,* that, under the pleadings, the burden of proof was on plaintiff to establish a change of domicile.

*Domicile—Change in itinere—Domicile of origin.*

In the above case it was not error to charge that if the jury conclude that testator abandoned his residence in Brooklyn with the intention of residing on his farm, or in Philadelphia, but died before consummating that intention, Brooklyn continued to be his legal place of residence.

Argued Feb. 6, 1893. Appeal, No. 312, Jan. T., 1892, by plaintiff, Charles J. Price, from judgment of C. P. Chester Co..

Aug. T., 1891, No. 100, on verdict for defendant, Jennie E.
Price. Before PAXSON, C. J., STERRETT, McCOLLUM, MITCH-
ELL and DEAN, JJ.

Issue to determine domicile on appeal from probate of will.

At the trial, before HEMPHILL, J., it appeared that Henry F.
Price was a native of West Chester, Chester county, Pa.
Shortly before reaching his majority he left West Chester and
resided for several years in Philadelphia, where he was in busi-
ness. Subsequently he engaged with the Laflin & Rand Pow-
der Co., as bookkeeper, went to Brooklyn, and resided in that
city for fifteen years until June 30, 1890. He then returned
to West Chester, where he remained until Aug. 26, 1890, when
he died, leaving a will good in Pa. but not in N. Y.

The further facts appear by the charge of the court, which
was in part as follows :

" It becomes important for you to determine what was the
purpose—what the intent—of Mr. Price when he left the city of
Brooklyn ; and was that intention consummated by his subse-
quent acts ? Now, all the testimony that has been offered as to
what occurred previous to his departure from Brooklyn is for
the purpose of showing you what his intentions were, and that
they were carried out, or were not carried out by his subse-
quent actions; because his mere intention would avail noth-
ing unless consummated by subsequent acts. It appears from
the testimony that he contemplated at one time going to West
Chester to live ; at another time residing in Phœnixville ; at
another time Birchrunville ; and at another time in Philadel-
phia. It is in evidence that his intentions at one time were
merely to come to West Chester, not for the purpose of making
it his residence, but on account of his illness, and because he
could get better nursing or better care here, and with a view
of returning to his residence in the city of Brooklyn. Now
you will call to mind the testimony produced. There can be
no doubt that, some time in May, he determined to quit his
business in New York ; his health would not permit of the seden-
tary life he was then leading. There can be no question about
that ; it is not a disputed question in this case ; and with that
in view he first spoke to the president and told him of his in-
tention of resigning about June 1, 1890 ; that he followed that

up by his actual resignation; that he subsequently packed up all his pictures (or all except one, I believe), and his books, and stored them in the basement of the building in which he had been employed; that he had his trunks packed and ready for removal; that on the 5th of June his condition became such that, under the advice of his physician, he was removed to the hospital, to the homœopathic hospital in Brooklyn. He remained there until brought to West Chester, which was on the 30th of June. Before leaving, he gave up his room in the boarding house, in the city of Brooklyn; brought with him to West Chester the two trunks that he had left there, or had had conveyed to the hospital with him, I am not certain which, and paid his board bill.

" Now the plaintiffs, upon whom the burden rests to satisfy you that there was a change of residence from the city of Brooklyn to West Chester, first offer these facts, which are uncontroverted, and ask you to infer from them that he thus acted, thus severed all his business relations, and his boarding-house relations in New York, because he then contemplated coming to the borough of West Chester to make it his residence and to leave his residence in the city of Brooklyn. He came here in company with Dr. Victor, a physician who had been attending him before he went to the hospital, and went to his sisters' home. What was his purpose in coming? You have learned of his various declarations and of his various intentions, and it is for you to weigh one with the other. Letters have been read to you from him to his daughter, to his brother, to his farmer, and to the senator in New York, from whom he purchased this patent irrigation, and several others whom I do not now recall, for the purpose of showing you, preceding his coming here, what his intentions were, and those after he had come, to show you that he had either consummated them or to satisfy you that he was only here temporarily, and intended, as soon as his health was restored, to go back.

" Now, gentlemen of the jury, if he came here solely for the purpose of recuperation, if he had no intention of remaining here longer than necessary to recover his health or to gain strength, then I say to you he had not acquired a residence here. A man may go abroad for years seeking health, seeking amusement, or on business, and never lose his residence, if he

has what the law terms the animum revertendi, the intention of
returning. The plaintiffs have produced evidence as to the
declarations he made, with a view of satisfying you that he
came here, not merely to remain until his health was restored,
or on a visit to his sisters, but for the purpose of making it his
permanent home. They have shown you that he purchased a
property in April with a view of making a change in his busi-
ness—that property was located near Birchrunville—and that
he had said he would spend his time in Phœnixville, Philadel-
phia and West Chester. They have attempted to satisfy you
by the testimony of his sister, who waited on him after he
came here, and by the testimony of his brother, that he had no
intention of returning to New York, unless it was, as he said,
to visit his friends. You will bear in mind, that these sisters
and this brother are interested parties, and in weighing their
testimony you will consider how far that interest, that pecuni-
ary interest which they have here, is likely to influence or affect
them in giving their testimony. In addition to the testimony
of these witnesses, you have also the declarations of Mr. Price,
the decedent, which you have heard commented upon by both
sides. Both consider his declarations as favorable to their re-
spective sides. You will say what your judgment is. Letters
written after his arrival here have also been offered, and in
addition to these his verbal declarations by the one side or the
other; there was also produced a will, as it is called, a letter of
direction, a paper of a testamentary character, written to his
brother to take effect after his death, and you are asked—from
the fact that in it he crossed out his late residence, in which he
said "I reside at 193 Livingstone street, New York"—to de-
duce from that that it was his intention thereby to give up his
residence there. In fact, to say: 'It is no longer my residence,
West Chester is to be my residence—I have changed my resi-
dence.' And as further evidence of his intention they have
produced a draft here of his contemplated improvements to the
house of his sisters—the old homestead, as it is called. It is in
testimony also that the draft was made by himself—that it was
his intention and purpose to have built two rooms in the rear
of his old homestead—the one below to be a summer kitchen,
and the upper one a room for himself, which was to be fitted
up for his own uses and purposes. They ask you to say from

that that he intended to make that place his permanent home and that he had ceased to be a resident of Brooklyn. Now, gentlemen of the jury, as I said to you at the outset, I do not propose to review this testimony; it has been carefully and laboriously gone over by counsel for both sides. I have, so far as I can recall the salient points, hastily gone over them, as they have presented themselves to my mind. There may be others which I have overlooked, which I do not remember, but [it is the duty of the jury to recollect all the evidence, to pass upon the credibility of the witnesses, and then, after considering all the evidence, say whether or not Mr. Price had changed his residence, prior to his death, from the city of Brooklyn to the borough of West Chester. He did not change it to any other place. You cannot go astray on that point, for he never went any other place, no matter what his intention may have been. His intention may have been to go to Birchrunville or Philadelphia, but an intention not carried out, not consummated by actual removal, amounts to nothing. It does not change his residence. His residence would remain where it was previous to any such thought or the existence of any such intention. But if he came here from Brooklyn, if he severed all his business relations and connections and came here to make this his residence, or if after he came here, perhaps not coming with the intention of remaining permanently, but temporarily, he changed his mind and then not only intended to but actually made this his residence by remaining here, then he changed his residence; otherwise, gentlemen, if his residence was not changed to West Chester, it still remained in Brooklyn.] [8] [If the plaintiff has satisfied you that he changed his residence in the way in which I have described to you, that the law requires it shall be changed,—then your verdict will be for the plaintiffs. If the plaintiffs have failed to satisfy you that he changed his residence, or if you are convinced from the evidence that he did not change it, then your verdict will be for the defendant."] [9]

Defendant's points were as follows :

"1. Henry F. Price having been a resident of the city of Brooklyn, in the state of New York, for more than fifteen years prior to June 30, 1890, the burden of proof is on the plaintiff in this cause to satisfy the jury that, at the time of his death,

to wit, August 26, 1890, his legal residence was other than in the city of Brooklyn aforesaid." Affirmed. [1]

"2. The plaintiff having alleged that the legal residence of Henry F. Price, at the time of his decease, was in West Chester, said plaintiff must satisfy the jury of this fact, otherwise the verdict must be for the defendant." Affirmed. [2]

"3. If the jury find that the legal residence of Henry F. Price, at the time of his decease, was anywhere else than in the borough of West Chester, Penna., the verdict must be for the defendant." Affirmed. [3]

"5. If the jury are unable to find where the legal residence of Henry F. Price certainly was, at the time of his decease, the law presumes that said residence was at his last well-known place of residence, to wit, in the city of Brooklyn, and therefore the verdict must be for the defendant." Affirmed. [4]

"6. In order for the jury to find that the residence of Henry F. Price, at the time of his death, was at West Chester, they must be satisfied that he not only lived here in point of fact, but that it was his intention to make West Chester his home." Affirmed. [5]

"9. If the jury should conclude that Henry F. Price abandoned his residence in Brooklyn, with the intention of residing in West Chester, at Birchrunville, or in Philadelphia, but died before consummating that intention, Brooklyn still continues to be his legal place of residence, and the verdict must be for the defendant. *Answer :* That I affirm, for I have already said to you, gentlemen, that his last residence continues to be his residence until he acquires a new one." [6]

"10. If the jury conclude that Henry F. Price left Brooklyn and came temporarily to West Chester, by reason of his illness, with the intention of residing on his farm, at or near Birchrunville, the verdict must be for the defendant. *Answer :* That point is also affirmed. An intention to remain temporarily does not constitute residence. It must be to make that a permanent place of abode." [7]

Verdict and judgment for defendant.   Plaintiff appealed.

*Errors assigned* were (1–9) instructions, quoting them.

*William T. Barber, Washington Townsend* with him, for ap-

pellant.—A man is prima facie domiciled at the place where he is resident at the time of his death, and it is incumbent on those who deny it to repel the presumption of law: Guer v. O'Daniel, 1 Am. L. Cas. 753; Williams v. Whiting, 11 Mass. 424; Cambridge v. Charleston, 13 Mass. 501; Story, Confl. L. § 45; Whart. Confl. L. § 31; Act of March 15, 1833, P. L.

If a man has acquired a new domicile different from that of his birth, and he removes from it with an intention to resume his native domicile, the latter is re-acquired, even while he is on his way, in itinere, for it reverts from the moment the other is given up: Story, Confl. L. § 47.

Abandoning an elective domicile, coupled with a return to the original domicile, though without the intention of remaining, may revive that domicile; and so, a fortiori, may an abandonment with an intention to return to such original domicile : Whart. Confl. L. § 60.

A domicile remains until a new one be obtained in fact and intention; except that the domicile of birth reverts, as soon as one who had acquired a new domicile removes from it, with the purpose to resume his native domicile: Reed's Ap., 71 Pa. 378.

Domicile of origin is coextensive with register's jurisdiction : Wh. Confl. L., 2d ed., § 31.

*Wm. M. Hayes,* for appellee.—As the issue was formed the burden of proof was upon plaintiff. The burden of proof lies upon him who asserts a change of domicile: Hood's Est., 21 Pa. 106; Burnham v. Rangeley, Wood & Minot, 7; 5 A. & E. Enc. L. 865, n. 2; Story, Confl. L., p. 53, note b; Wh. Confl. L. § 55.

To effect a change of domicile there must be intention and act united: 2 Kent, 431, note c; Casey's Case, 1 Ash. 126; Pfoutz v. Comford, 36 Pa. 422; Wilbraham v. Ludlow, 99 Mass. 587; Forbes v. Forbes, 3 Am. Law Reg. O. S. 255; Carey's Ap., 75 Pa. 201; Reed's Ap., 71 Pa. 383; Hindman's Ap., 85 Pa. 469; Follweiler v. Lutz, 112 Pa. 107 ; Moorhouse v. Lord, 10 H. of L. C. 272; Ayer v. Weeks, 65 N. H. 248; 3 A. & E. Enc. L. 632; 5 Ib. 877; Whart. Conf. L. § 69 a.

Where a person abandons the domicile of origin in fact and with a present intention to acquire a new one, if he dies in itinere and before he has consummated that intention by an actual residence, the domicile of origin immediately reverts : Smith v. Croom, 71 Fla. 81.

The place of a person's death is of very little importance in determining his domicile: Jacobs on Domicile, § 426; Somerville v. Somerville, 5 Ves. Jr. 750; 5 A. & E. Enc. L. 872.

In general, the place where an unmarried man has his business, and exercises his political right, is his domicile: Malone v. Lindley, 1 Phila. 192.

Where a person abandons his business and home, not with a view to a permanent abode elsewhere, but only to regain his health or prolong his life by travel, he does not thereby change his domicile: Still v. Woodville, 38 Miss. 646; Isham v. Gibbons, 1 Bradf. 69; Hegeman v. Fox, 31 Barb. 475; Dupuy v. Wurtz, 53 N. Y. 556.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 2, 1893:

In obedience to the precept of the orphans' court, this feigned issue was formed for the purpose of determining the disputed question of fact, whether, at the time of his decease in August, 1890, Henry F. Price was a resident of and domiciled in Pennsylvania. The validity of the testamentary paper alleged to be his last will, as well as the jurisdiction of the register of wills in admitting the same to probate, depended upon the determination of that question. The proponent of said alleged will, the executor therein named, was made plaintiff in the issue, and decedent's only child was made defendant. In his declaration, the plaintiff "averred that said Henry F. Price, at the time of his decease, was a legal resident of Pennsylvania," etc. Defendant in her plea distinctly traversed that averment, and issue was joined thereon. It therefore follows that the burden of proof was on the plaintiff; and he recognized that fact by proving in the outset that decedent was born in West Chester, Pa.; that, about the time he attained his majority, he embarked in business and acquired a domicile of choice in the city of Philadelphia, and, after residing there for eight or ten years, he removed to New York, many years ago, and there acquired and maintained his second domicile of choice. These facts were conceded; but it was necessary for plaintiff to go further, and he accordingly introduced testimony tending to prove that said decedent, less than two months before his decease, abandoned his New York domicile and resumed his domicile of origin in West Chester, Pa., and resided there until he died. This lat-

ter allegation, that he abandoned his New York domicile, etc., was controverted by defendant, who introduced testimony tending to prove the contrary.   It is not our purpose to review or discuss this conflicting testimony.   It is sufficient to say that it bore directly on the issue formed by the pleadings and was clearly for the exclusive consideration of the jury, whose special province was to judge as to the credibility of the witnesses, weigh the evidence and determine for themselves whether it was true, as alleged by the plaintiff, that the decedent did abandon his New York residence and come to West Chester with the intention of thenceforth making his permanent home in this state. By their verdict in defendant's favor, the jury have by necessary implication declared that he did not ; and unless the learned trial judge erred in one or more of the particulars complained of, their verdict should not be disturbed.

The question at issue, and the different phases thereof, as presented by the testimony, together with the law applicable thereto, were all clearly and accurately stated in the general charge and answers to defendant's points.   In the language of her fourth, seventh and eighth points, which were affirmed and not excepted to, the following instructions were given : " 4. If the jury find that the legal residence of Henry F. Price was, at the time of his decease, in the state of New York, the verdict must be for the defendant."   " 7. Acts alone are not sufficient to constitute residence, but it requires acts and intentions combined."   " 8. The ownership of real estate in Chester county, not coupled with residence therein, is of no value with reference to domicile or residence."   The first to seventh specifications, inclusive, are to the learned judge's answers to her remaining points, and the eighth and ninth are to portions of his charge recited therein respectively.   In affirming the first and second points, he, in the language thereof, instructed the jury : " 1. Henry F. Price having been a resident of the city of Brooklyn, in the state of New York, for more than fifteen years prior to June 30, 1890, the burden of proof is on the plaintiff in this cause to satisfy you that, at the time of his death, August 26, 1890, his legal residence was other than in the city of Brooklyn, aforesaid : " and " 2. The plaintiffs having alleged that the legal residence of Henry F. Price, at the time of his decease, was in West Chester, said plaintiff must

satisfy the jury of this fact, otherwise the verdict must be for the defendant."

There was certainly no error in affirming these points. It was proved by plaintiff and conceded by defendant that Brooklyn, New York, was decedent's chosen domicile for more than fifteen years prior to June 30, 1890. In the absence of affirmative proof to the contrary, the presumption would be that Brooklyn continued to be the place of his legal residence until his decease. The defendant was certainly not required to prove a negative, especially in view of the pleadings, in which, as we have seen, the plaintiff assumed the burden of proving the affirmative fact upon which his whole case depended. Citation of authority for a proposition so self-evident as that is surely not required.

In view of the evidence, we think there is no error in either of the other answers to defendant's points. Neither of them requires discussion. We find nothing in any of the instructions complained of that is not substantially in harmony with the settled principles of law, relating to the subject of domicile.

As generally defined, a person's domicile is the place where he has his true, fixed and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. Beginning life as an infant, every person is at first necessarily dependent. When he becomes an independent person he will find himself in possession of a domicile, which in most cases will be the place of his birth, or domicile of origin as it is termed. By his own act and will, he can then acquire for himself a legal home or domicile different from that of origin, termed a domicile of choice. This is acquired by actual residence coupled with the intention to reside in a given place or country, and cannot be acquired in any other way. For that purpose, residence need not be of long duration. If the intention of permanently residing in a particular place exists, a residence in pursuance of that intention, however short, will establish a domicile. The requisite animus is the present intention of permanent or indefinite residence in a given place or country, or, negatively expressed, the absence of any present intention of not residing there permanently or indefinitely. Domicile of origin must be presumed to continue until another sole domicile has been acquired by actual residence, coupled with the inten-

tion of abandoning the domicile of origin.    This change must be animo et facto, and the burden of proof is on the party who asserts the change : 5 Am. & Eng. Enc. of Law, 857, 861 to 865, and cases there cited ; Hood's Est., 21 Pa. 106 ; Pfoutz v. Crawford, 36 Pa. 421 ; Reed's Ap., 71 Pa. 378, 383 ; Carey's Ap., 75 Pa. 201 ; Hindman's Ap., 85 Pa. 466, 469 ; Follweiler v. Lutz, 112 Pa. 107 ; Jacobs on Domicile, § 150 ; Story's Confl. of Laws, § 55.

In those portions of the charge complained of in the last two specifications the jury were rightly instructed "to recollect all the evidence, to pass upon the credibility of the witnesses, and then, after considering all the evidence, say whether or not Mr. Price had changed his residence, prior to his death, from the city of Brooklyn to the borough of West Chester.    He did not change it to any other place.    You cannot go astray on that point, for he never went to any other place, no matter what his intention may have been.    His intention may have been to go to Birchrunville or Philadelphia, but an intention not carried out, not consummated by actual removal, amounts to nothing.    It does not change his residence.    His residence would remain where it was previous to any such thought or the existence of any such intention. . . . . If his residence was not changed to West Chester, it still remained in Brooklyn."

Again : "If the plaintiff has satisfied you that he changed his residence, in the way I have described to you, that the law requires it shall be changed, then your verdict will be for the plaintiff."

The case appears to have been carefully tried.    We find no error in the instructions given to the jury.    If they erred in not finding according to the weight of the evidence, the remedy was in the court below on the motion for new trial.    That was considered and denied, presumably because the trial judge was satisfied with the verdict.    We cannot review his action in that regard.

Judgment affirmed.