## Atlantic Refining Company v. Fabian et al.

*Foreign attachment—Jurisdiction—Actual residence and legal residence or domicil—Act of June 21, 1911.*

1. The words "not residing within the Commonwealth," used in the foreign attachment statutes, are not equivalent to "not domiciled within the Commonwealth." To so hold would be to defeat in most instances the purpose of the statute, which is to compel the constructive presence in court of a defendant who, by reason of absence from its jurisdiction, without a dwelling-place therein, cannot be served with a summons. Non-residence in this State, and not residence in another state, is the test of jurisdiction, and protracted absence may mean "non-residence."

2. On a rule to dissolve a foreign attachment, it appeared that the defendant, who claimed that he still retained his local residence, had left his boarding-place in Lancaster County, leaving·his business in the hands of another under a power of attorney, and gone to California, after telling witnesses that he wanted to sell out and would not stay here, and afterwards returned to the East and remained for a time in different places, while his wife removed her furniture to her former home in New Jersey and stayed there. He maintained no home or boarding-place in this county after leaving, and was in California when the writ issued: *Held*, that the rule should be discharged.

The Act of June 21, 1911, P. L. 1097, considered.

Rule to dissolve foreign attachment. C. P. Lancaster Co., Oct. T., 1921, No. 33.

*F. Lyman Windolph* and *Oliver S. Schaeffer*, for rule.

*J. Andrew Frantz*, contra.

LANDIS, P. J., Jan. 14, 1922.—On Sept. 21, 1921, the plaintiff issued a writ of foreign attachment against the above-named defendant, and thereby attached one Cadillac automobile in the custody of Glen Searing, whom he summoned as garnishee. Thereupon, on Sept. 24, 1921, the defendant, through Searing as his attorney-in-fact, presented his petition, alleging that the said Fabian was a citizen of the State of Pennsylvania, residing at Lancaster, Pennsylvania, R. F. D. No. 6, where he was conducting a garage and automobile repair shop; that on Aug. 26, 1921, he left the city and county temporarily on a business trip, leaving his property, including the said automobile, in charge of said Searing, whom he duly appointed his attorney-in-fact; that during this temporary absence the writ of foreign attachment was issued. Upon these grounds he asks that it be dissolved.

Under the Act of June 21, 1911, § 1, P. L. 1097, "a writ of foreign attachment . . . may be issued against the real or personal estate of *(a)* any person not residing within this Commonwealth and not being within the county in which such writ shall issue at the time of the issuing thereof; or *(b)* of any corporation incorporated under the laws of any other state or nation in all actions *ex contractu* and in actions *ex delicto* for a tort committed within this Commonwealth." Was, then, the defendant a person not residing within this Commonwealth and not within the county when the writ issued?

2 D. & C.

Atlantic Refining Company *v.* Fabian et al.

The defendant was born in Lancaster County, but, prior to March, 1919, he was engaged in business in Elizabeth, New Jersey, as an automobile mechanic and as a mechanic for racing drivers. At that time he moved to Bridgeport, Lancaster County, and opened a garage. According to his testimony, which is uncontradicted, on Aug. 26, 1921, he left Lancaster and went to Uniontown, Pennsylvania, where he remained for two days. From there he went to Fresno, California, where he remained three weeks, and afterwards to Santa Rosa, in the same state, for two weeks. He then came back to Philadelphia, where he has since been living. When in this county, he and his wife were boarding with Mr. and Mrs. Greenburger, at Bridgeport, and he was assessed in West Lampeter Township in 1921. His wife left Greenburger's on July 3, 1921, and went to her home in Elizabeth, New Jersey, taking with her most of the furniture that they had. She has been residing at that place ever since, except that she came to Lancaster County on Labor Day to get the few things that she had left behind. The defendant has maintained no home nor boarding-place in this county since he left. He said that his furniture was in storage at Elizabeth, except that a table and three chairs remained in the garage at Bridgeport. When he went away, he gave Searing a power of attorney to conduct and manage his business, and placed in his hands the garage equipment, an ambulance, wire, gasoline outfit, tools, and so forth, and Searing carried it on and paid some debts of Fabian's, but he never paid any money over to him, and only wrote to him how he was carrying on the business. About Nov. 1, 1921, Searing made a lease with the Greenburgers for the shop, they having told him that they would not lease to Fabian. Fabian has only been in Lancaster twice since he left in August— once for twenty-four hours and the second time for two or three days. He claims that he still retains a residence in Lancaster County, and that his absence was only temporary; but several witnesses have testified that he told them that he wanted to sell out, and that he was going to California, and would not stay here. It is conceded that he did not live here when the attachment issued, and does not now.

In Graybill *v.* Hoover, 28 Dist. R. 389; 36 Lanc. Law Rev. 48, this court said: "Vattel defines domicile to be a fixed residence with an intention of always staying there, and Mercur, J., in Hindman's Appeal, 85 Pa. 466, said it was 'that place in which' a person 'has fixed his habitation, without any present intention of removing therefrom.' Residence is a question of intention, and in cases involving it the inquiry is *quo animo.* Upon the solution of this depends whether the party has gained or lost a residence. But before this question can arise, an actual removal must have taken place. A mere intention to remove, if not consummated, can neither forfeit the party's old domicile nor enable him to acquire a new one. Removal out of the State without an intention of permanently residing elsewhere will not lose residence: Steinman & Co. *v.* Erisman, 8 Lanc. Law Rev. 177; Casey's Appeal, 1 Ashmead, 126; Reed's Appeal, 71 Pa. 378." In Shenk & Peters *v.* Hall, 17 Lanc. Law Rev. 114, this court held that "an original domicile is not abandoned until a new one has been intentionally and actually acquired," and in that and other cases dissolved the foreign attachment; but in all of them it will appear that the defendant had some kind of an actual residence within the county at the time the attachment issued, and, under the facts of the cases as presented, we think the conclusion arrived at was correct.

But in Raymond *v.* Leishman, 243 Pa. 64, the Supreme Court seems to have expressed somewhat different views. Mr. Justice Mestrezat, delivering the opinion of the court, said: "Foreign attachment, under our statute, is the

equivalent of a summons for commencement of a personal action: Megee v. Beirne, 39 Pa. 50, 62. It is a process by which to commence a personal action and compel an appearance: Albany City Ins. Co. v. Whitney, 70 Pa. 248. The foundation for the writ is that the defendant is beyond the reach of process and his property within it: Pennsylvania R. R. Co. v. Pennock, 51 Pa. 244. The purpose of the statute is to compel the constructive presence in court of the defendant, who, by reason of his absence from its jurisdiction without a dwelling-place therein, cannot be served with a summons. The law regards it the duty of a debtor to answer the demand of his creditors and permit his indebtedness to be litigated when it is due, and if he is beyond the usual process of the court, they are remediless unless they may invoke the remedy to compel his appearance by seizure of his property. In construing the statute authorizing the issuance of the writ, its object should be kept in view so as to accomplish the intended purpose. If we hold with the defendant that 'not residing within the Commonwealth' is the equivalent of and means 'not domiciled within the Commonwealth,' the purpose of the statute in most instances will be defeated. A debtor may absent himself from the jurisdiction of the court for years on business or pleasure and still retain his domicil at his former residence. In the meantime, the creditor has been seriously injured financially because he cannot enforce payment of his claim against his debtor. It is no answer to say that he may follow his debtor into the jurisdiction of his residence. . . . In construing the statute, it should be observed that the jurisdiction conferred by it does not compel the debtor to acquire a domicil or residence in another state. He may do so, but it is not a prerequisite to the issuance of the writ. Non-residence in this State, and not residence in another state, is the test of the jurisdiction of the court to issue the writ. Actual and not constructive or legal residence or domicil defeats the writ. A casual or temporary sojourn or transient journey beyond the State will not confer jurisdiction; but if the debtor's absence is so protracted that he cannot be reached by the ordinary process of the court, he is 'not residing within the Commonwealth' within the meaning of the statute, and the creditor is entitled to the writ. As was well said by Chancellor Runyon, delivering the opinion of the Court of Errors and Appeals of New Jersey in Stout v. Leonard, 37 N. J. L. 492, 496: 'In determining whether his debtor is within the provisions of the statute, the creditor and the courts must necessarily be guided by the ordinary and obvious *indicia* of residence or the absence of such indications, and the purposes of the act are not to be thwarted by the secret mental resolves or intentions of the debtor on the subject of his domicil.'" The court, then proceeding, quotes from Lawson v. Adlard, 46 Minn. 243: "It is apparent, from an examination of the most approved authorities, that, in construing statutes relating to attachment of the property of non-residents, a wide distinction has been recognized between an actual residence and a legal residence, the latter being generally deemed the domicil, and not the residence, contemplated; the word 'residence' being construed in its popular sense as the act of abiding or dwelling in a place for some continuance of time."

In this case the defendant was not residing within the Commonwealth when the attachment issued, and he had no abiding place here. When he left Lancaster County, he seems to have intended to leave for good. He may have changed his mind after he got to California; but that is of no importance, for when he returned the writ had issued. I am of opinion that at that time he was not residing within the State, and that, therefore, the writ of foreign attachment was properly issued against him. For this reason, the rule is discharged. Rule discharged.          From George Ross Eshleman, Lancaster, Pa.