Anderson et al. *v.* Miller et al., Appellants.

Argued October 29, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Thomas F. Garrahan,* with him *H. W. McIntosh,* for appellants.

*W. D. Gallup,* with him *F. D. Gallup* and *E. G. Potter,* for appellees.

OPINION BY PARKER, J., January 31, 1936:

The McKean County Poor District, by its proper representatives, filed a petition in the Court of Quarter Sessions of McKean County, in pursuance of Section 801 of "The General Poor Relief Act of 1925" (Act of May 14, 1925, P. L. 762, §801, as amended by Act of May 23, 1933, P. L. 966; 62 PS 801), alleging that one George Gelybich was in that county, had not acquired a settlement therein, was likely to become a public charge, and that he had a settlement in the Allegheny County Poor District, and praying for a citation requiring the directors of the poor of Allegheny County Poor District to show cause why an order should not issue for his removal to the Poor District of Allegheny County. A rule to show cause having issued and the respondent having made answer denying the allegations contained in the petition, a hearing was held and the court made an order for the removal of Gelybich to Allegheny County. As it is conceded that he had first acquired a settlement in Allegheny County, the only question involved on this appeal is as to the sufficiency of the evidence to sustain the findings that Gelybich had not acquired a settlement in McKean County and was likely to become a public charge therein.

It would unduly extend this opinion and serve no good purpose to recite and analyze the testimony offered

by the parties. We have carefully read the entire record and are all of the opinion that the evidence warranted the order made by the court below. We shall therefore only refer to such of the facts as are necessary to sustain the order.

Gelybich, a native of eastern Europe, was about fifty-six years of age at the time of the hearing. He could read and write to a limited extent in his native language, had but little education, and could testify only through an interpreter. He came to this country about thirty years ago and about 1920 acquired a legal settlement in Allegheny County where he was employed and resided with his wife and six children. Some time later and between 1924 and 1928, he quarreled with his wife on account of his intemperate habits and left home. He then worked at times in Michigan, Jamestown, N. Y., and Erie and in lumber camps in Warren, Forest, Elk, and McKean Counties, the last two or three years having been spent in McKean County. During his sojourn in northwestern Pennsylvania, he was engaged in the occupation of a wood cutter and followed up lumbering operations in the counties named. He found shelter in these lumber camps where he was given the use of a room in which he lived, slept, and cooked for himself. For about two years prior to the institution of this action he was able to earn an average of eleven to twelve dollars per month. While in McKean County he was given to intoxication, was taken into custody at least twice, and made himself a nuisance to the citizens of Mount Jewett which was located within a few miles of the lumber camp where he was last working. At the time of the hearing, he had been out of employment for six or eight months. He testified that he intended to return to his family and that he had sent them money, but this was denied by his wife who testified that he had not written her or sent her any money since he left. It was necessary for those having charge of the

indigents of the county to give him attention, but he supported himself until he was taken to the county home a few months before the petition was filed. He had no means except such small wages as he earned and, while not insane, was weak in mind.

"A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. To constitute the new domicile two things are indispensable: First, residence in the new locality; and, second, the intention to remain there. The change cannot be made except *facto et animo*. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change": Mitchell v. U. S., 88 U. S. 350, 353. Also, see Price v. Price, 156 Pa. 617, 27 A. 291; Fry's Election Case, 71 Pa. 302.

It is difficult for us to see how one familiar with lumbering operations in northwestern Pennsylvania, as was the learned judge who presided at this hearing, could come to any other conclusion than he did. Gelybich had a domicile in Allegheny County where his family, consisting of wife and children, lived. It is a matter of common knowledge that it has been difficult to find employment in the large cities for a number of years and it is not strange, even taking into account his dissipated habits, that he should have sought temporary employment where he could find it. He proceeded to roam from place to place working as a wood chopper. From the very nature of these operations the natural inference may be drawn that in following these camps and moving to the different sites where timber was cut, followed by wood chopping, he intended to remain only for a limited time and then move to another location. The very nature of the accommodations in one of these lumber camps rebuts any inference of permanency of

abode or intention to remain at a given place. As the name indicates, these camps are but temporary shelters of the crudest kind and are intended to serve their purpose for a limited time. He moved from place to place covering a number of counties, and it was by chance that these different operations for two years or more immediately prior to the presentation of this petition happened to be confined to McKean County. We also have the evidence of his own declared intention to return to his family. The ultimate question is to be determined by the facts taken together as a whole. So considering the evidence, it discloses no intention upon the part of Gelybich to choose McKean County or any particular place therein as a place of residence where he intended to remain. His family is still located at the place where he had acquired a settlement, and it seems proper that he should be returned to Allegheny County.

On the question of Gelybich being likely to become a public charge the evidence is just as convincing. He was given to intemperance, was not strong mentally, earned very small wages when employed, was at the time out of employment, and had required the attention of public officials. In addition, he had so conducted himself that he had become a nuisance to the good citizens of the locality where he was living, and the reasonable inference is that he was at the time of hearing likely to become a public charge. We are all of the opinion that the evidence justified the findings of the court that George Gelybich did not acquire a settlement in McKean County and that he was likely to become a charge on that county.

The order of the court below is affirmed at the cost of the appellant.