## Swartz's Estate

*Bernard G. Segal* and *Herman H. Krekstein*, for appellant.

*Joseph A. Culbert*, for respondent.

STEARNE, J., April 9, 1936.—This is an appeal by the widow of decedent from the decree of the register of wills admitting to probate the will of decedent as a resident of Philadelphia County, State of Pennsylvania. In her petition upon appeal the widow avers that at the time of the death, and for approximately 16 years prior thereto, decedent was a resident of and was domiciled in the United States of Venezuela, South America. Decedent was survived by his widow, the petitioner, and three minor children, said minors being represented by a guardian ad

litem appointed by this court. Answers to the petition were filed by the executor named in the will and by the guardian ad litem, admitting all the facts set forth in the petition, except as to the averred intent of decedent to change his domicile of origin, concerning which proponent of the will demanded proof. A replication was filed, joining issue, and the case came on for hearing.

From the admitted facts in the pleadings and the testimony offered, it was established, and I find, that Henry Swartz, the decedent, prior to 1919, was a citizen of the United States of America, domiciled in the City of Philadelphia, State of Pennsylvania. In the year 1919 decedent, employed by the Shell Oil Company, removed to Maracaibo, Venezuela, South America. On December 17, 1924, decedent married petitioner, a citizen and resident of Venezuela. They established a home in Maracaibo. From this union the three children above mentioned were born. The parties continued to reside and were domiciled in Maracaibo until 1932, when decedent, with his family, removed to Caracas, the capital of Venezuela. Here decedent established his home, resided and was domiciled until the time of his death on June 24, 1935, when he was killed in an airplane accident at Medellin, Colombia, South America. Decedent, at the time of his death, and for some years prior thereto, was engaged in the moving picture business. According to the undisputed testimony, decedent always maintained his home, with his family, in Venezuela. He also maintained business offices in Maracaibo and Caracas. The wife and children were in their home at Caracas when testator died.

From 1919 to 1935 decedent made three visits to the United States. During this period the wife and children made one visit.

Decedent's first visit was in 1923. It consisted of a short business trip, during which he spent less than one day in Philadelphia and did not remain overnight.

In April 1931 the wife and her children came to Philadelphia. This was occasioned by necessary medical treat-

ment required by one of the children. Under the physician's order they remained from April 1931 to October 1932, when they returned to Venezuela and did not return during decedent's lifetime.

In July 1932, while his family was in Philadelphia, decedent came on to Philadelphia from Venezuela and spent the week-ends with his family for some weeks, spending most of his time in New York in connection with his business. Decedent returned to Venezuela and shortly thereafter, in October 1932, his family returned to their home in Caracas. It was during this interval that decedent, in Philadelphia, executed his will, dated September 6, 1932, wherein he described himself as "a resident of the City of Philadelphia, State of Pennsylvania, in the United States of America, which I affirm to be my permanent residence."

In February 1934 decedent made his third and final visit to the United States. He remained but a month and visited Philadelphia on three or four occasions, each time for one day, to visit his mother and brother.

Beyond the declarations in the will as to decedent's American domicile, there is nothing in the testimony which contradicts the plain and unequivocal proof that since 1919 decedent was a resident of and domiciled in the United States of Venezuela, South America.

The widow testified that decedent said he always intended to live in Venezuela and never mentioned anything about changing except in case he should retire, in which event they would return to the United States.

An issue is raised, under the foregoing pleadings and facts, as to the jurisdiction of the Register of Wills of Philadelphia County to probate the will and issue letters testamentary thereon.

The theory of Anglo-American law concerning jurisdiction to admit a will to probate is that the State within whose territorial limits the testator was domiciled at the time of his death has jurisdiction to admit his will to probate: 1 Page on Wills (2d ed.) §528; Brooklyn Trust Co.,

Trustee, v. Warrington, 277 Pa. 204; McKeown's Estate, 10 Dist. R. 332; 23 C. J. 1010, §34; 68 C. J. 937, §687.

"Appeals from the register involving a question of domicile are governed by the same rules as if the issue were one of *devisavit vel non:* Price v. Price, 156 Pa. 617": Flaherty's Estate, 6 D. & C. 703, 704. Such determination by a hearing judge is based upon his findings of facts and conclusions of law.

Consideration need not be given, under the facts of this case, to the vexed distinction between "domicile" and "residence": Nelson's Estate, 21 D. & C. 29, 33; or to the provisions of section 2($a$) of the Fiduciaries Act of June 7, 1917, P. L. 447, section 4 of the Register of Wills Act of June 7, 1917, P. L. 415, and section 24 of the Wills Act of June 7, 1917, P. L. 403: Harding's Estate, 12 D. & C. 633, 635.

When this decedent in 1919, then a citizen of the United States of America, domiciled in the City of Philadelphia, removed to Venezuela actuated by purely business motives, I rule as a matter of law that such "domicile of origin": Price v. Price, 156 Pa. 617, 626; is presumed to continue until it is changed, and where a change of domicile is alleged the burden of proving it rests upon the person making the allegation: Barclay's Estate, 259 Pa. 401.

A "domicile" has been judicially defined as "the place where he (decedent) has his true, fixed and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning": Price v. Price, supra; Hunter v. Bremer, 256 Pa. 257; Raymond v. Leishman, 243 Pa. 64. "It is the legal conception of home. The word 'domicile' is derived from the latin 'domus', meaning a home or dwelling house": 19 C. J. 392. In discussing the definition of "domicile" our brother Sinkler, in Nelson's Estate, 21 D. & C. 29, 31, quotes the language of Lord Chelmsford in Whicker v. Hume et al., 7 H. L. C. 124, 160:

"By domicile we mean home, the permanent home; and if you do not understand your permanent home, I am

afraid that no illustration drawn from foreign writers or foreign languages will very much help you to it."

From the evidence adduced at the hearing there cannot exist the slightest doubt that petitioner has fully met the burden resting upon her to establish that decedent completely changed his domicile of origin. The fact that he subsequently married a native of Venezuela, resided there and established and maintained his only home in Venezuela, reared and educated his children there, permanently conducted his business there and made but three casual visits to the United States during the last 16 years of his life, irresistibly leads to the conclusion, as a matter of law, that by act and deed decedent established a domicile in Venezuela, where he resided at the time of his death. The only evidence which tends to oppose this conclusion is found in the will itself, wherein decedent, in the preamble to the document, declares himself a resident of Philadelphia and affirms that this city is "his permanent residence".

The reason for such declaration has not been presented. Neither the scrivener who drew the will nor the persons who witnessed it were called upon the witness stand. Apparently a disclosure of motive or reason, if any, for such statement has been prevented by testator's death. It is a well-settled principle of law that more weight will be given to a person's acts than his declarations, and when they are inconsistent the acts will control. A person's expression of desire may not supersede the effect of his conduct. A direct statement that a testator considers himself as domiciled, or to have his home, in a certain place, while important, nevertheless has little weight when the actual facts are contrary. Such declarations are merely evidential. A declaration as to domicile, at best, is a self-serving declaration, and if it is not followed by acts in accord with the declaration it will not be regarded as conclusive. It will yield to the intent which the acts and conduct of the testator clearly indicate: see opinion of Chief Justice Frazer in Dorrance's Estate, 309 Pa. 151.

Under the facts above recited the decedent's declaration, unsupported and unexplained, must yield to the proven facts that at the time of his death, and for nearly 16 years prior thereto, decedent was domiciled in Venezuela and not in Pennsylvania.

Wherefore, the appeal of Ana Isabel Swartz, widow of Henry Swartz, deceased, from the judicial act of the Register of Wills of Philadelphia County admitting to probate the writing dated September 6, 1932, is hereby sustained, and the decree of probate and the granting of letters testamentary are set aside, and the letters testamentary thereon granted to Jacob Schwartz are hereby revoked, and the record is remitted to the register, with directions, upon compliance with the foregoing order, to deliver the original testamentary document to the appropriate person in order that it may be duly probated at the place of decedent's domicile.