## Keasbey's Trust Estate.

Argued May 14, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

440

*Benjamin O. Frick,* with him *Rodney T. Bonsall,* for appellant.

No appearance was made nor brief filed for appellee.

OPINION BY MR. JUSTICE STERN, May 26, 1941:

Henry G. Keasbey and Richard V. Mattison owned all the stock of Keasbey and Mattison Company. Certain litigation between them was compromised by Mattison purchasing Keasbey's shares for $3,900,000, of which $750,000 was paid in cash and $3,150,000 by the delivery to Keasbey of Mattison's bond for that amount secured by the deposit with Fidelity-Philadelphia Trust Company of all the shares of the company's stock. The bond, which was dated January 11, 1929, provided for the payment of the principal in seven annual instalments on January 25th of each year thereafter, the first six of

$500,000 each and the last $150,000, all with interest at the rate of six per cent per annum.

On January 16, 1929, Keasbey executed an irrevocable deed of trust to Fidelity-Philadelphia Trust Company, whereby he assigned to it all his right, title and interest to the extent of $2,000,000 in the principal sum of the Mattison bond, being the four instalments of $500,000 each due on January 25, 1931, 1933, 1934 and 1935, and also in and to "all the interest required to be paid by the terms of the said bond . . . on the entire principal sum . . . and on each and every part thereof."[1]  The net income, "including the interest required to be paid by the terms of the bond . . . on the entire principal sum . . . and on each and every part thereof," was to be paid to a daughter, Marguerite Anna Keasbey, another daughter, Helen Keasbey Frischkorn, and a son, Henry Turner Keasbey, and at their respective deaths to their survivors in certain proportions; upon the death of the last survivor the principal was to be transferred to designated persons and institutions.  It was provided that "for the purposes of this deed all interest required to be paid by the terms of the bond . . . on the entire principal sum . . . and on each and every part thereof, is to be considered income."  It will be noted that Keasbey did not assign all his right, title and interest in and to the bond to the trustee but reserved to himself the $500,000 instalments due January 25, 1930 and 1932, and the final instalment of $150,000 due January 25, 1936.

Mattison paid to Keasbey the $500,000 due January 25, 1930, and to the trustee the $500,000 due January 25, 1931, and all interest to April 1, 1931.  He then became insolvent and defaulted in subsequent payments of interest and instalments of principal, leaving a balance due of principal of $2,150,000 of which there was

---

[1] There were placed in the trust small amounts of other securities of no special importance in the present controversy.

owing to Keasbey $650,000 and to the trustee $1,500,000 and interest on the entire $2,150,000.

Keasbey died May 30, 1932, a resident of Montgomery County, and his will, wherein Fidelity-Philadelphia Trust Company was appointed executor and trustee, was probated in that county.

As a result of a reorganization of Keasbey and Mattison Company and a distribution among his creditors of Mattison's personal assets, there was ultimately realized on the Mattison bond the sum of $1,445,783.15, of which Fidelity-Philadelphia Trust Company allocated to itself as trustee under the Keasbey deed the sum of $1,008,549.39, and as trustee under the Keasbey will $437,233.76, debiting these amounts in each instance wholly to principal. This division was made on the basis of the principal sums owing to the testamentary trustee and the trustee under the deed of $650,000 and $1,500,000 respectively, ignoring the fact that the trust inter vivos might be entitled to an additional share by reason of the assignment to it of all the interest payable under the terms of the Mattison bond.

Helen Keasbey Frischkorn, one of the life tenants under both the deed of trust and the testamentary trust, died December 14, 1938. Thereafter Fidelity-Philadelphia Trust Company filed its account as trustee under the deed in the Orphans' Court of Philadelphia County and as testamentary trustee in the Orphans' Court of Montgomery County. At the audit of the former account the executor of the Estate of Helen Keasbey Frischkorn contended that the proceeds of the Mattison bond allocated to the trust inter vivos should be applied to the interest required to be paid under the bond before any application was made to the principal of the trust, since the interest, according to the terms of the deed, was to be considered income under the trust; in the alternative he contended that there should be a proper apportionment between principal and income. The auditing judge rejected the claim for application

of the proceeds first to interest, but allowed a certain measure of apportionment.

Exceptions were filed by the executor of the Estate of Helen Keasbey Frischkorn, by the trustee under the deed of trust, and by the guardian ad litem of minor remaindermen. The court in banc did not pass upon the merits of the adjudication, but took the position that before the relative rights of the life tenants and the remaindermen under the trust could be determined it should be made certain that the total proceeds had been properly divided between the trust inter vivos and the testamentary trust and that the former had received all to which it was entitled. It pointed out that that matter could be determined only in the Orphans' Court of Montgomery County where the account of the testamentary trustee was pending, because, while the Orphans' Court of Philadelphia County could surcharge the trustee under the deed for any excess improperly paid to the other trust, the Montgomery County court alone could make the necessary order on the testamentary trustee if it found that some of the proceeds allocated to that trust should be returned to the trust inter vivos. The court said: "We have considerable doubt concerning the accountant's action in ignoring the right of the inter vivos trust to apportionment with respect to 'interest' on the entire obligation and in accepting the division solely on the basis of the principal claims. . . . As a matter of procedure . . . it seems unwise and impractical to consider surcharging a fiduciary for failure to prosecute a legal claim when proceedings involving the claim itself are pending before a court of competent jurisdiction which can adjudicate all phases of the question in dispute. Since the excess, or overpayment, if any, is in the testamentary trust, for which an account is presently pending in Montgomery County, a majority of the court is of opinion that we should suspend confirmation of the adjudication and direct the trustee of the trust inter vivos to present a claim against

the testamentary trustee for the alleged excess or over-payment." Accordingly, the court dismissed all the exceptions "pro forma", and recommitted the record to the auditing judge "to await the termination of the proceedings in Montgomery County relating to said claim." From that order the executor of the Estate of Helen Keasbey Frischkorn appeals.

The appeal must be quashed. From the earliest days of the Commonwealth the statutory law has provided that only from a *final* or *definitive* decree of the Orphans' Court will an appeal lie to the Supreme Court.[2] No judgment or decree is final that does not terminate the litigation: *Sinking Spring Water Co. v. Gring*, 257 Pa. 340, 101 A. 732. In the absence of statutory authority to the contrary, an appeal will not lie from an interlocutory judgment, notwithstanding that inconvenience to a party may result: *Miller Paper Co. v. Keystone Coal & Coke Co.*, 275 Pa. 40, 44, 118 A. 565, 567; or even though the litigants consent that the appellate court should entertain the appeal: *Watkins v. Hughes*, 206 Pa. 526, 527, 56 A. 22; *Monnia's Estate*, 270 Pa. 367, 369, 113 A. 550, 551; *Wood v. Harlan*, 78 Pa. Superior Ct. 92, 96. A decree of a court is final when a party is thereby precluded from further action

[2] Act of March 27, 1713, sec. 9, 1 Sm. L. 81, 84: "If any person or persons shall be aggrieved with any *definitive* sentence or judgment of the said Orphans' Court it shall be lawful for them to appeal from the same to the Supreme Court."

Act of April 19, 1794, sec. 24, 3 Sm. L. 143, 153: "When any *final* decree or sentence shall be pronounced by any Register's Court, the party or parties . . . against whom such decree or sentence, or judgment, shall be given, may appeal therefrom to the Supreme Court, . . ."

Act of March 29, 1832, sec. 59, P. L. 190, 213: "Any person aggrieved by a *definitive* sentence or decree of the Orphans' court may appeal from the same to the Supreme Court."

Act of June 7, 1917, sec. 22(a), P. L. 363: "Any party aggrieved by the *definitive* sentence or decree of any orphans' court . . . may appeal therefrom to the proper appellate court. . . ."

in that court. Such is not the case here. All the court below did was to suspend confirmation of the adjudication until the termination of the proceedings in Montgomery County, so that the latter could first determine whether the trust inter vivos had received all the proceeds of the Mattison bond to which it was entitled. A suspension of proceedings for a temporary period is not an appealable order. See, by way of analogy, *Valentine's Appeal,* 3 W. N. C. 471; *Turner's Estate,* 183 Pa. 543, 546, 38 A. 1040, 1041; *International Coal Mining Co. v. Pennsylvania Railroad Co. (No. 2),* 214 Pa. 474, 63 A. 882. As to the dismissal of the exceptions *pro forma,* see *Appeal of George West,* 3 S. & R. 92.

Appeal quashed.