## Loudenslager Will.

Argued January 15, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harry L. Kaufman,* with him *White, Kelly & Gennetti,* for appellants.

*Richard S. Clover,* for appellees.

OPINION BY MR. JUSTICE JONES, April 16, 1968:

This appeal presents a narrow issue: was the "last family or principal residence" of Adam Loudenslager (decedent) in Montgomery County so as to vest the register of wills of that county with *jurisdiction* to probate his will?

For a number of years, decedent owned and resided in a property known as 2716 North Ruth Street, Philadelphia, wherein he had maintained an apartment above his business shop since approximately 1940 and which he continued to maintain until the date of his death on July 27, 1966. Between August and November 1965, decedent stayed with his daughter, a Mrs. Gross, at 10406 Haldeman Avenue, Philadelphia, and, thereafter, stayed with the same daughter until the early part of May 1966 at an apartment house in Philadelphia. At that time, he returned to live at 2716 North Ruth Street, Philadelphia, and remained there until July 8, 1966. The record reveals beyond any question that, until July 8, 1966, decedent's "family or principal residence" was in Philadelphia.

For a period of a year or more prior to his death, decedent, 83 years of age, had been suffering from various illnesses which had physically handicapped him to the extent that he required some help in dressing and taking care of himself. On July 8, 1966, several of decedent's children took him to the home of one of his daughters, a Mrs. Frisch, who lived at 3596 Glen Way, Huntington Valley, Montgomery County, and he remained there until July 13, 1966, at which time he was removed to a nursing home in Philadelphia. He remained at that nursing home until July 16, 1966 when he was again taken to Mrs. Frisch's home in Montgomery County.[1] After remaining there approxi-

---

[1] On July 13, 1966, decedent made a will and, immediately thereafter, was placed in the nursing home. Upon his release from

mately six days, he was admitted to the Jeanes Hospital, Philadelphia, wherein he was a patient until his death, five days later, on July 27, 1966. Decedent's physical presence in Montgomery County was approximately two weeks.

On August 10, 1966, three of decedent's children probated a will, dated July 13, 1966, in Montgomery County and the register of wills of that county issued letters testamentary to these children who were nominated in such will as executors. Approximately four months later, Mrs. O'Brien and Mrs. Rothsching, two children excluded under decedent's will (contestants), filed a petition for an appeal from the probate of the will alleging (a) lack of testamentary capacity, (b) undue influence, and (c) that decedent's residence at the time of death was in Philadelphia and not Montgomery County. The latter allegation was the only one considered in the court below and, on this appeal, is the sole question before us.

After hearing, the Orphans' Court of Montgomery County found that decedent had intended to abandon his Philadelphia domicile, to make Montgomery County his new domicile and that Montgomery County at the time of decedent's death was his "last family and principal residence." Exceptions to this decree having been dismissed, the court entered the final decree from which this appeal was taken.

Initially, the court below concluded that, since the proceeding was an appeal from the probate of a will, it was the *burden* of the contestants to produce evidence to set aside the probate decree.[2] With that conclusion we do not agree.

---

the nursing home three days later, he made another will. Several of decedent's children are attacking the validity of the will of July 13, 1966.

[2] The court below relied on *Szmahl's Estate*, 335 Pa. 89, 6 A. 2d 267 (1939), *Mader Will*, 16 Fiduciary Rep. 81, 84 (1965) and

Where the appeal challenges the *validity* of the will itself the burden is upon the contestants, once execution of the will has been shown and the facts of probate established, to prove the invalidity of the instrument: *Brantlinger Will,* 418 Pa. 236, 242, 210 A. 2d 246 (1965) and authorities therein cited (testamentary capacity); *Mitchell Will,* 420 Pa. 218, 215 A. 2d 676 (1966) (undue influence); *De Maio Will,* 363 Pa. 559, 70 A. 2d 339 (1950) (undue influence); *Brehony v. Brehony,* 289 Pa. 267, 270, 137 A. 260 (1927) (forgery). However, where the appeal attacks the *jurisdiction* of the register of wills to probate a will a different rule prevails.

The sole place of probate of a will of a Pennsylvania resident is mandated by statute to be the county wherein such person had "his last family or principal residence" (Act of June 28, 1951, P. L. 638, §301, 20 P.S. §1840.301) at the time of his death. Under our case law, "residence", in the statutory sense, is synonymous with "domicile" (*Obici Estate,* 373 Pa. 567, 570, 571, 97 A. 2d 49 (1953)). "The domicile of a person is the place where he has voluntarily fixed his habitation with a present intention to make it either his permanent home or his home for the indefinite future:": *Publicker Estate,* 385 Pa. 403, 405, 123 A. 2d 655 (1956). See also: *Dorrance's Estate,* 309 Pa. 151, 172, 163 A. 303 (1932). We further said in *Publicker,* supra: "To effect a change of domicile there must be a concurrence of the following factors: (1) physical

---

Fiduciary Review, (March 1967), p. 4. *Szmahl's Estate,* was an appeal from probate in which it was alleged the will lacked validity because it was forged. *Mader,* insofar as it is contrary to our view, is no longer authoritative. The editors of Fiduciary Review, commenting on *Mader,* stated: "Where the contestant appeals to the orphans' court seeking reversal of the register's decree, it would appear, by analogy to cases involving other will contests" that the burden is on the contestant.

presence in the place where domicile is alleged to have been acquired, and (2) an intention to make it his home without any fixed or certain purpose to return to his former place of abode: [citing an authority]." (pp. 405, 406).

In determining a person's domicile, the language of the United States Supreme Court, almost a century ago in *Mitchell v. United States,* 21 Wallace 350, is most appropriate: "A domicile once acquired is presumed to continue until it is shown to have been changed. Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. . . . Mere absence from a fixed home, however long continued, cannot work the change [of domicile]. There must be the *animus* to change the prior domicile for another. Until the new one is acquired the old one remains. These principles are axiomatic in the law upon the subject." (p. 353). See also: *Price v. Price,* 156 Pa. 617, 625-627, 27 A. 291 (1893); *Dorrance's Estate,* supra; *Pusey's Estate,* 321 Pa. 248, 265, 184 A. 844 (1936); *Obici Estate,* supra.

In the case at bar, it is not disputed—indeed, it could not be—that up until July 8, 1966—*19 days prior to his death*—the domicile of decedent was in Philadelphia County which had been his domicile for many, many years. The question at issue is whether the decedent had changed his domicile to Montgomery County and the burden of proving that such a change of domicile had been effected was not upon the contestants, as the court below held, but upon the proponents of the probate of the will: *Price v. Price,* supra, pp. 625-627; *Barclay's Estate,* 259 Pa. 401, 404, 405, 103 A. 274 (1918); *Dorrance's Estate,* supra, 172; *Pusey's Estate,* supra, 265, 266 (1936); *Obici Estate,* supra, pp. 571, 572; *Ritz Estate,* 8 Pa. D. & C. 2d 115 (1956). It was the duty of the proponents of the probate of

this will, by clear and satisfactory proof, to overcome the presumption that decedent continued to retain his domicile in Philadelphia County. That the procedure involved in this litigation was an appeal from the probate of the will did not shift the burden to the contestants. Unlike an appeal from probate which challenges the validity of the will, i.e., lack of testamentary capacity, forgery, undue influence, etc., wherein we review the *manner* in which the court below arrived at its determination, the instant appeal attacks the *competency* of the court below, by reason of lack of jurisdiction, to make *any* determination. The status of the register of wills as a quasi-judicial officer does not alter the result as the court below implies in its opinion. The present attack is not on the manner in which the register exercised his judicial functions but whether he had the right, under the circumstances, to exercise *any* judicial function. The case law, in our view, mandated that the will proponents, on the appeal to the court below, carry the burden of establishing that the register of wills had *jurisdiction* to probate this will.

Bearing in mind the burden placed upon the proponents and that less evidence is required to prove a continuance of a domicile than to establish a new domicile (*Pusey's Estate,* supra, 265), we turn to an examination of the instant record.

Several facts have been conclusively shown: (1) decedent died in a Philadelphia hospital; (2) decedent's death certificate indicates that, in answer to the question "Where did deceased actually live?", the response was "Phila." County, "Penna." State; (3) this response and information was given by Mrs. Frisch at whose home in Montgomery County it was claimed decedent had established his domicile; (4) at the time decedent was taken from his Philadelphia residence to

Mrs. Frisch's home in Montgomery County, he took with him his personal belongings but left his furniture in his Philadelphia apartment; (5) at the time of his removal to Montgomery County and for some period of time prior thereto, decedent was physically ill, in pain, and suffering, inter alia, from a broken arm; (6) the physician who took care of decedent had his office in the general area wherein decedent's daughter, Mrs. Frisch, lived and decedent was treated by his physician at the latter's office and not in the former's home in Philadelphia; (7) the lawyer-drawn will of July 13, 1966, recites: "I, Adam Loudenslager, Widower, of Lower Moreland Township, Montgomery County, Pa.";[3] (8) at the utmost, decedent was physically present, at interrupted intervals, in Montgomery County for a total of twelve days.

In reaching its conclusion that decedent intended to move to Montgomery County and that he intended to remain there without any fixed or certain purpose to return to his Philadelphia address, the court relied principally upon the testimony of a Mrs. Ada Kucher, characterized by the court below as "the only disinterested witness". Mrs. Kucher was a next-door neighbor of decedent in Philadelphia and had known him for thirty years. The court below, having had the opportunity to hear and observe this witness, determined that she was credible and that imprimatur of credibility we accept. The particular portion of Mrs. Kucher's testimony upon which the court relied was as follows: "Q. The topic of discussion of going with

------

[3] Such evidence, when contradicted by other facts and circumstances, is of little weight: *Dalrymple's Estate*, 215 Pa. 367, 371, 64 A. 554 (1906); *Winsor's Estate*, 264 Pa. 552, 107 A. 888 (1919); *Dorrance's Estate*, supra, 169, 170; *Swartz's Estate*, 26 Pa. D. & C. 181, 185 (1936); "Penna. Will Drafting", Smith & Aker, §11.1, pp. 206, 207.

his daughter Bertha: How long did that take him and you to discuss? A. Oh, he used to talk to me a lot about it. Q. Did he? All right. A. You see, when I was talking to him about how nice my daughter had it down Jersey and he told me about his daughter having a nice place and having apple trees and all up there, and you can sit out. 'Well,' I said, 'instead of staying down in the city in the hot sun, why don't you go there'? And he said he was thinking about going up there. Q. Do you recall the first time that he expressed that to you? A. Oh, he said that several times to me. Q. I know, but, when? A. Oh, I just couldn't think when, because he said it several times. Q. Before July—A. Oh, yes. Q. A month before? A. A couple of years he told me that, too. Q. A couple of years before that? A. Yes, he said,—I said: 'Well, instead of staying down in the city in the hot sun, you don't have to do nothing,' I said 'you go and take it easy.' BY MR. CLOVER: Q. After the 8th of July of last year, did you see Mr. Loudenslager again? A. No, because he told me he was going away. He was up to his daughter's."

According to Mrs. Kucher's testimony full credibility, we fail to perceive from our examination thereof the requisite expressed intent on the part of decedent to make Mrs. Frisch's home in Montgomery County either his permanent home or his home for the indefinite future. Unlike the court below, we fail to find in Mrs. Kucher's testimony proof of an intent on the part of decedent to "stay for the rest of his days" in Montgomery County.

Our reading of Mrs. Kucher's testimony and the testimony of all the other witnesses produced by the proponents of this will does not reveal the necessary *animus* to establish a change of domicile. On the contrary, the record portrays decedent in the early part

of July, 1966, as an aged and ill person, whose son,—try as he did—, was unable to assume the duty of caring for the decedent in his condition; in view of decedent's ill health and the fact that his physician was in close proximity to Mrs. Frisch's home in Montgomery County decedent was removed to Montgomery County. We cannot find sufficient evidence upon which to predicate a finding that decedent intended to make the home of Mrs. Frisch his permanent home or domicile. In our view, the proponents of the probate of this will have failed to carry their burden, by the requisite standard of proof, to establish a change of domicile from Philadelphia to Montgomery County.

The court below erred in placing the burden of proof upon the contestants and the record does not sustain a finding of a change of domicile by decedent.

Decree reversed. Appellees to pay costs.

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Although the majority correctly states that the only question before us is the county of decedent's domicile, it fails to note that the parties have arrived at an understanding[1] that the other two grounds advanced to defeat probate—lack of testamentary capacity and undue influence—will be litigated after this Court's decision.[2] With these further grounds of attack reserved, the appeal here is from a clearly interlocutory order. See, e.g., *Stewart Estate*, 423 Pa. 189, 223 A. 2d 685

[1] The briefs of both parties indicate that they wished to have the jurisdictional question first determined.

[2] The judge below was obviously not aware of the parties' understanding for, in the last line of his opinion, he states: "The appeal from probate as it relates to domicile is therefore dismissed, and this matter shall be scheduled at a time to be set to proceed with other grounds of appeal."

(1966) ; *Keasbey's Trust Estate*, 342 Pa. 439, 20 A. 2d 281 (1941). Of course, the Act of August 10, 1951, P. L. 1163, §771, 20 P.S. §2080.771, permits appeals only from final orders or decrees of an orphans' court. The fact that this appeal involves a jurisdictional question does not make an otherwise interlocutory order appealable for orphans' court decrees are not within the purview of the Act of March 5, 1925, P. L. 23, §1, 12 P.S. §672. *Heinz's Estate*, 313 Pa. 6, 169 Atl. 365 (1933).

However, there has been no motion made to quash this appeal. In the absence of such a motion (which, had it been made, should have been granted), we still may quash this appeal on our own motion. See *Steel v. Levy*, 282 Pa. 338, 127 Atl. 766 (1925); *Kennedy v. Banbury Equipment Corp.*, 202 Pa. Superior Ct. 242, 195 A. 2d 832 (1963). As a judicial system already overburdened with litigation, we should not encourage piecemeal appeals and I thus believe that this appeal should be quashed.

Turning to the merits of this controversy, the majority opinion suffers from a failure to distinguish between two subtle, but nevertheless distinct, aspects of the problem generally classified under the rubric "burden of proof." Those two aspects are the burden of first producing evidence and the burden of persuasion.[3] The burden of first producing evidence is a procedural rule designed for the orderly conduct of trials; it tells the court upon which party the burden rests to first come forward with his evidence. The burden of persuasion has a different function—it determines which party must produce that quantum of evidence neces-

---

[3] See generally McCormick, Evidence §§306-07 (1954); Wigmore, Evidence §§2485-87 (1940). Professor Wigmore uses the perhaps more apt term the "risk of non-pursuasion" rather than the burden of persuasion.

44

sary either to take his case to a jury or to convince a judge that a fact has been established. Although in many cases the same party will have both the burden of first production and the burden of persuasion, this is one case in which these burdens are properly allocated to different parties. To the appellants falls the burden of first production but to appellees is given the burden of persuasion.

In the context of this case, we should be initially concerned with what impact the probate of decedent's will by the register has upon the burden of first producing evidence. Although the majority seems to distinguish between the burden of first producing evidence when the issue is the validity of the will and the burden of first production when the issue is the jurisdiction of the register, our cases support no such distinction. Stemming primarily from the doctrine that the grant of letters of administration is a judicial act,[4] our cases have evolved the rule that the party seeking reversal of a register's action has the burden of first production. Perhaps the best clarification of this rule is contained in *Geho's Estate*, 340 Pa. 412, 415-16, 17 A. 2d 342, 344 (1941): "Proof of the fact of the probate of a will does not upon an appeal from the probate have any *evidential* value . . . but it does have *procedural* value, for it raises a presumption of the will's validity and this presumption becomes a challenge for *proof* addressed to the challenger of the will. . . .

"The proper practice upon appeals from the probate of a will is to offer the register's record of probate, including the will. Then the burden of coming

4 See *West v. Young*, 332 Pa. 248, 251, 2 A. 2d 745, 746 (1938); *Erie Indemnity Co. v. Greene*, 14 Pa. D. & C. 2d 301, 310 (C.P. Dauphin Cty. 1957).

forward with proof shifts to the contestants. [Citation omitted.] This burden of proof does not shift back to the proponents until the contestants have offered evidence of such probative value in support of their allegations against the will, that if it stood uncontradicted it would upon an issue being awarded support a verdict against the will." (Emphasis in original.) *Geho* gives not an inkling that the burden of first production turns upon the nature of the issue involved; and it does not for the reason that this burden is a function not of the nature of the issue but of the fact that a quasi-judicial tribunal has already decided that the will should be probated. The nature of the issue raised is thus irrelevant and the party appealing the register's decision always has the burden of first production.

Once the burden of first production has been met (I believe that the evidence offered by the appellants was sufficient to meet this burden), the court must then allocate the burden of persuasion. If one envisions the evidentiary scales equally in balance, the burden of persuasion would dictate which party prevails—and that party would be the party on whose shoulders the burden of persuasion does *not* fall. Placed in context, which party here had the burden of persuading the trial court that decedent died domiciled in Montgomery County? I agree with the majority that the appellees had this burden, and therefore also conclude that the court below erroneously placed the burden of persuasion upon the appellants.

Having decided that the court below erroneously allocated the burden of persuasion, the issue remains as to the proper disposition of this litigation. It is here that I must dissent. There is testimony in this record by two of the appellees, both daughters of the decedent, that he intended to make Montgomery Coun-

ty his domicile. If the trial judge believed these two witnesses, even with the burden of persuasion properly placed upon the appellees, they should prevail. The trial judge did not make any assessment of the credibility of the witnesses other than Mrs. Kucher because his misallocation of the burden of persuasion rendered this assessment unnecessary. In my view, this record should be remanded so that the court below may evaluate the testimony presented in light of a properly allocated burden of persuasion, and I therefore conclude that a reversal without remand is improper.

Mr. Justice O'BRIEN joins in this dissenting opinion.