## Mayor Estate

*Huganir, Butera & Detwiler,* for petitioner.

*High, Swartz, Roberts & Seidel* and *Silver & Barsky,* contra.

TAXIS, P. J., March 11, 1970.—Decedent died on September 8, 1968. At that time, he resided in New Jersey, and his will has been probated there. His widow, Jane B. Mayor, is a lifelong resident of Pennsylvania and although the parties separated in 1964, decedent also was a resident of this State until a few days prior to his death, when he took an apartment in New Jersey. On March 20, 1969, Jane B. Mayor filed elections in Montgomery County to take against the will (if possible under Pennsylvania law) and also against a certain lifetime conveyance by decedent, within the scope of section 11 of the Estates Act of April 24, 1947, P. L. 100, sec. 11, 20 PS §301.11. This latter election is the actual nub of this controversy and concerns decedent's action on July 11, 1968 (being still a resident of Pennsylvania), when he changed the beneficiary of his interest in the profit-sharing plan

of Mayco Oil and Chemical Co., Inc., from his wife to Ingeborg Lambert, petitioner herein. The value of this interest exceeds $37,000, and is not a part of the probate estate. The parties have stipulated, moreover, that New Jersey law has no provision for a surviving spouse to elect to take against the will of the deceased spouse.

The election is based on allegations that a provision of the profit-sharing plan (in form, an inter vivos trust) stated that it should be administered under Pennsylvania law, and that the probate courts of New Jersey will not have jurisdiction over the fund in any event. Ingeborg Lambert then filed the present petition to vacate the election on the grounds of lack of jurisdiction in this court.

The petition to vacate the election must be refused. While we doubt that decedent had established his domicile in New Jersey, it is not necessary to base the decision on this issue. Cf. Loudenslager Will, 430 Pa. 33. The first contentions of petitioner are that (1) section 10 of the Wills Act of April 24, 1947, P. L. 89, sec. 10, 20 PS §180.10, requires elections to be filed in the county where the will is probated, and (2) section 11 of the Estates Act of 1947 requires a spouse electing against lifetime conveyances also to elect to take against the will, and that since Jane B. Mayor has not, and cannot, comply with these requirements, her elections are invalid. However, neither of these enactments is meant to deal with the issue presently before us. Section 10 of the Wills Act is a venue provision, clearly directed toward confining these aspects of estate administration to one county. Section 11 of the Estates Act is just as clearly directed to the prevention of a spouse electing to take under a favorable will and at the same time cutting into inter vivos conveyances, thus receiving more of the deceased spouse's estate than either he or the statutes of Pennsylvania pro-

vide. Neither of these statutes can reasonably be read as determinative of the substantive law to be applied in a conflict of laws situation.

We are also mindful that the provision in the profit-sharing agreement that its "construction, validity and administration" are to be governed by Pennsylvania law, does not answer the present problem. The resolution of conflicting claims by beneficiaries (to benefits which are clearly due to someone by the terms of the agreement) would hardly qualify as a matter within this phraseology; it is dependent upon the validity of actions outside the agreement. Nor do we have to hold that this court would have jurisdiction over the administration of this type of "inter vivos trust." The matter is governed instead by a determination of the law to be applied to the transfer of decedent's interest in the plan.

It is usually said that the rights of a surviving spouse in decedent's personal property are determined by the law of his domicile: Mallory's Estate, 300 Pa. 217. However, this rule presupposes decedent's ownership of the property. Where this is not a premise but the ultimate issue, it follows that we must refer to the law governing the validity and effect of the transfer itself. Under these circumstances, decedent's subsequent New Jersey residence becomes of little moment.

Decedent was domiciled in Pennsylvania at the time of the transfer. So was his wife, and she remains here. The situs of the profit-sharing plan and of the corporation creating it is in Pennsylvania. The assets of the plan, and the fund due decedent's beneficiary, are here. Viewing these facts as a whole, it becomes evident that no jurisdictional problem was present or even suggested until decedent moved to New Jersey in the last few days of his life. This is not a substantial enough factor by itself to eliminate the jurisdiction of this court. See Schoble Trust Estate, 346 Pa. 318. In

summary, we hold that the transfer when made was by a Pennsylvania domiciliary married to a Pennsylvania domiciliary (who remains so), that the situs of the property transferred, though an intangible, is in Pennsylvania, and that under such circumstances the validity of the transaction should be determined by Pennsylvania law. See also Restatement, Conflict of Laws, §294.

It is true that cases exist or can be postulated wherein the result is not as clear as here. In Brégy, Wills and Estates Act of 1947, pages 5873-78, we find a scholarly discussion of the difficulties which can occur in this area, and this work has been cited by both sides to this controversy. We adopt its suggestion that Lines v. Lines, 142 Pa. 149, indicates the proper result in these matters, even if for a number of reasons it cannot be regarded as controlling. In that case, a Pennsylvania domiciliary created a trust of certain securities while he was in New York, with a New York trustee, and it was held that New York law determined the rights of the spouse in the trust. Therefore, even if decedent's residence in New Jersey were given significance, it would not change the result we have reached. Mr. Brégy also notes that Fowler Appeal, 125 Pa. 388, appears contrary, because it was there held that the Pennsylvania statute against accumulations did not apply to a trust with a Pennsylvania trustee, where settlor was from Illinois and died there, the deed of trust was made there, the beneficiary lived in Colorado, and all of the securities were of foreign corporations. The court noted as a reason for its decision that the statute against accumulations applied only to Pennsylvania citizens; but even if this rationale is applied here with reference to the statutes involved in this case, Mrs. Mayor is such a person and is entitled to the protection which our laws provide for her, if under such laws she has an interest in the

transferred property. We do not disagree in principle with Mr. Brégy's statement (page 5877, supra) that ". . . our courts would do well to limit this section (Section 11 of the Estates Act) to Pennsylvania domiciliaries, . . ." to avoid problems which he there discusses in some detail; but we do not think the Fowler rule, where the only Pennsylvania contact with the trust was the identity of the trustee, applies to a case where the only *non-Pennsylvania* element is a change of residence by the transferor a few days before his death and a considerable time after the transfer was completed. Indeed, it seems probable that the Lines and Fowler cases are capable of reconciliation if both are regarded as examples of the judicial process of "balancing the contacts" existing between the respective jurisdictions and the subject matter of the litigation: Brégy, supra, page 5875. For a clear example of the application of this process, see Schoble Trust Estate, supra, at page 326.

Accordingly, the petition to vacate the election is dismissed, and the matter will be listed for hearing on the merits upon application.