George S. **KRASNOV** and The Merchants National Bank of Allentown, Administrators of the Estate of Sol Weissman, Deceased, and Beatrice Weissman, Deceased

v.

Brendan **DINAN.**

Civ. A. No. 71–734.

United States District Court, E. D. Pennsylvania.

Oct. 18, 1971.

Donald J. Farage, Farage & Shrager, Philadelphia, Pa., for plaintiffs.

John R. McConnell, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

HAROLD K. WOOD, District Judge.

Defendant has moved to dismiss plaintiffs' cause of action for lack of diversity of citizenship.[1] The present action, instituted under the Wrongful Death and Survival statutes, arises from an automobile accident on August 30, 1969 which resulted in the deaths of plaintiffs' decedents. Plaintiffs instituted suit in the Court of Common Pleas of Philadelphia County. This action, having been transferred to Lehigh County, is presently awaiting trial. On March 25 of this year plaintiffs deposed defendant and concluded that he was a citizen of the State of Connecticut. Thereafter they brought the present action, alleging diversity of citizenship.

It is uncontested that plaintiffs are citizens of Pennsylvania and that the amount in controversy exceeds $10,000.-00. The crucial issue is whether defendant is, as plaintiffs claim, a citizen of

---

1. This was originally plaintiffs' motion for partial summary judgment on the issue of diversity. Thereafter defendant moved to dismiss the action on grounds of lack of diversity. We consider the latter motion the proper method of presenting the issue to the Court and consider only this motion.

Connecticut or, as he contends, a citizen of Pennsylvania. If he is the latter, the action must be dismissed for lack of diversity of citizenship.

Defendant, Brother Brendan Dinan, is a member of a semi-monastic order which can assign him to teach wherever it determines that his services are needed. From January, 1960, to January, 1962, he taught in Brooklyn, New York. Thereafter he was transferred to Connecticut where he remained until August, 1968. At that time he was reassigned to Bethlehem, Pennsylvania, and he continues to live and teach there.

■ The terms "citizenship" and "domicile" are synonymous. Unanue v. Caribbean Canneries, Inc., 323 F.Supp. 63 (D.C.Del.1971). Consequently we now consider whether defendant was, on March 26, 1971, when this suit was instituted, a domiciliary of Pennsylvania, i. e.: whether Pennsylvania had become his domicile of choice.

■ To establish a domicile of choice, two elements must be present: physical presence in the domicile claimed and an intention by the person to make the domicile his home. Korn v. Korn, 398 F.2d 689 (3rd Cir. 1968). Clearly defendant satisfies the physical presence requirement, having lived in Pennsylvania continuously since August, 1968. The record further establishes his intention to make Pennsylvania his home. At his June 30 deposition, defendant testified as follows:

"Q: Now, while you were residing in Brooklyn as you have just described a minute ago, where did you intend to make your home?

"A: Brooklyn.

"Q: Now, why did you intend to make your home in Brooklyn at the time you were stationed there?

"A: Well, it was my home. I worked there. This is our thinking and you are part of the community, the Congregation is. When you go to an area —when you are assigned to an area, this is your home and you become a native.

\*    \*    \*    \*    \*    \*

"Q: And where did you intend to make your home upon assignment to Pennsylvania?

"A: Bethlehem." (N.T. 12–13, 15).

Plaintiffs argue, however, that while defendant states that he considers Pennsylvania his home, his actions indicate otherwise and that his actions and not his declarations are controlling. Dorrance's Estate, 309 Pa. 151, 163 A. 303 (1932). We find no action on defendant's part inconsistent with his stated intention to make Pennsylvania his home. Plaintiffs cite the fact that defendant has never voted in Pennsylvania and that he last voted in the Presidential election of 1968 by casting an absentee ballot as a Connecticut citizen although he resided in Pennsylvania. However, defendant explained that he did this because Pennsylvania's 90-day residence requirement precluded him from voting in the Commonwealth. Under these circumstances we do not believe that his casting an absentee ballot affected his status as a domiciliary of Pennsylvania. On the contrary the fact that he attempted to vote in the Commonwealth and cast an absentee Connecticut ballot only when he was unable to do so supports his statement that he intended to make his home in Pennsylvania.[2] We also see no significance in the fact that defendant has never obtained a Pennsylvania driver's license but continues to drive with a Connecticut operator's license. While he should have obtained a Pennsylvania license, it is a matter of common knowledge that many persons making their home in a new state simply neglect to obtain a resident driver's license until their old one expires. Defendant testified that this is the reason that he has not obtained a Pennsylvania license. We do not believe that his inadvertent failure to obtain a Pennsylva-

2. Defendant has not attempted to vote in Connecticut since November, 1968.

nia driver's license can be construed as a conscious intention on his part to retain his former domicile. Plaintiffs also cite defendant's statement at his first deposition that his "official residence" is "West Haven, Connecticut, which is the provincial administration or central office." At his second deposition defendant testified that he meant to convey that West Haven was his official address, the address of his provincial superior, and the address which should be contacted in case of emergency, but that his home was Bethlehem, Pennsylvania. At no time did defendant ever indicate that West Haven was his home but only that it was his official residence because the Order's central office is located there. This in no way contradicts his statement that he considers Pennsylvania his home.[3]

Plaintiffs further allege that defendant's stated intent to make Pennsylvania his home is insufficient for two reasons: first, he never intended to move to Pennsylvania, but moved there only because directed to do so by his superiors, and secondly, he did not intend to live in Pennsylvania permanently, but only until he was reassigned elsewhere. Neither ground negates defendant's capacity to claim Pennsylvania as his domicile.

While plaintiffs may be correct in alleging that defendant did not move to Pennsylvania of his own choice, certainly he had the choice of making Pennsylvania his home or considering it merely a temporary residence. His testimony indicates that he chose to do the former. As he did so, Pennsylvania became his domicile and the fact that it was not his choice to move to the Commonwealth in the first place is immaterial. Finally, the law is settled that it is not necessary in order for one to establish a state as his domicile that he intend to reside there permanently. Gallagher v. Philadelphia Transportation Company, 185 F.2d 543 (3rd Cir. 1950); Spurgeon v. Mission State Bank, 151 F. 2d 702 (8th Cir. 1945), cert. den. 327 U.S. 782, 66 S.Ct. 682, 90 L.Ed. 1009 (1946). What is required is that he intend to reside there for an indefinite period of time.[4] *Gallagher, supra.* Loudenslager Will, 430 Pa. 33, 240 A.2d 477 (1968). Clearly defendant intends to live in Pennsylvania for an indefinite period of time, i. e.: until he is reassigned elsewhere. Such reassignment may come shortly, some years from now or not at all. There is no present intention on his part either to return to Connecticut or to live elsewhere.[5] In fact he turned down an assignment to New York approximately one year ago.[6] Accordingly we conclude that at the time that suit was instituted defendant was a domiciliary of Pennsylvania and the action must be dismissed for lack of diversity jurisdiction.

---

3. Defendant was also asked at his first deposition "Where is your home, basically?" to which he answered "New York City." It appears as though defendant interpreted the question as "Where is your original home?" and responded by giving his parents' home. The record is clear that defendant does not intend to return to New York and has no relationship to New York other than the fact that his parents live there. We therefore attach no weight to this statement.

4. *Cf.* Rest. Conflict of Laws 2d § 18 (1971): "To acquire a domicil of choice in a place, a person must intend to make that place his home for the time at least."

5. See Williamson v. Osenton, 232 U.S. 619, 34 S.Ct. 442, 58 L.Ed. 758 (1914).

6. Apparently members of defendant's order may decline reassignments, although the final decision is that of the superiors.